Turner, J.
 

 As observed by the Court of Appeals in its opinion in this case: “An anomalous situation is presented by the undisputed facts in this record.”
 

 There is a question whether under the relevant facts of this case more than one guardian was appointed. Then there is the principal question whether one who has solicited the appointment as guardian of the estates of minors may thereafter neglect the administration of his trust to the injury of the wards without the ■duty to account in full for the funds or property which his wards would have received had he not neglected .his trust. A final question arises in respect of the jurisdiction of the Probate Court, which question is reflected in the italicized portion of the following quotation from the opinion of the probate judge:
 

 “Whether Mr. Gunckel exercised the care required -under the law as laid down in that case
 
 [State
 
 v.
 
 Guilford,
 
 18 Ohio, 500], or whether he was justified in relying upon the care that the mother would be presumed to use for the benefit of her children,
 
 is a matter that ■might be raised in a'different suit in another court.”
 
 (Italics ours.)
 

 At this point it should be emphasized that Gunckel -was not appointed guardian of the persons of these wards.
 

 Whether joint guardians were appointed for the estate of the minor will become material in this case only
 
 *212
 
 if both Gunckel and the mother were qualified for such appointment. In other words, the appointment of the mother may have been void, with the result that she may have been a
 
 de facto
 
 guardian. These matters can be decided only when all of the facts are before the court.
 

 Section 10917, General Code (108 Ohio Laws, pt. 2, 1162), in effect at the time of the appointment of the guardians herein, provided:
 

 ■ “No person who is or has been an administrator, or executor of a last will, shall, prior to the approval of his final account as such executor or administrator, be appointed a guardian of the person and estate or of the estate-only of a minor who is interested in the estate administered upon or entitled to an interest under or by virtue of such will. But an executor or an administrator may be appointed a guardian of the person only of a minor.”
 

 ■ In the case of
 
 Scobey
 
 v.
 
 Gano,
 
 35 Ohio St., 550, a mother of a ward was, at the time of her appointment as guardian, administratrix of the estate of the father of the child. Discussing Section 6256, Eevised Statutes, which later became Section 10917, General Code, Judge Okey said at page 553:
 

 “Clearly, as it seems to us, the facts show that Amanda’s appointment was within the prohibition of this statute, however it may be construed; but the question remains, whether such appointment can be regarded as void in a collateral proceeding. We-fully recognize the rule stated in the well-considered case of
 
 Shroyer, Gdn.,
 
 v.
 
 Richmond,
 
 16 Ohio St., 455, as to the character of the jurisdiction of the probate courts and the verity which is imported by their records; but this, does not conflict with another well-established general rule, that the jurisdiction of a court is a matter into which inquiry may be made even in collateral proceed
 
 *213
 
 ings, where the record contains no finding of facts expressly showing jurisdiction. * * [Citing cases.] But here there is no express finding as to the qualifications of Amanda, and the fact that she was administratrix of an estate in which Eliza Kinney was interested, was probably unknown to the Probate Court of Hamilton county.
 

 “We come, then, to the consideration of the question ■whether the Probate Court of Butler county could law.fully appoint Scobey guardian, no order having been ■.made setting aside or rescinding the appointment of Amanda, mother of Eliza Kinney. In determining this. ■ question we fully recognize the general rule that where a guardian has been appointed by the proper authority, and is in the discharge of the duties of his trust, ■the appointment of another person to the same office is void. * * * [Citing cases.] But we do not think that principle applies in this case. Amanda, being the .administratrix of Horatio S. Kinney, was ineligible to be guardian of the estate of a minor who was interested in the estate of the decedent.” ¡
 

 ■ This- court held in that case that the-Probate Court •of Butler county might make the appointment notwithstanding the void appointment theretofore made by the Probate Court of Hamilton county had not been -vacated or rescinded. (See, also,
 
 Union Savings Bank & Trust Co., Exr.,
 
 v.
 
 Western Union Telegraph Co.,
 
 79 Ohio St., 89, 86 N. E., 478.)
 

 In the instant case the only evidence we have that Celia Zimmerman was administratrix of the estate of Max Zimmerman, in which estate the wards were interested, is to be found in the three receipts signed by Celia Zimmerman and Will G-unckel under date of Oe tober 11, 1927, approximately ten months after their ■appointment as guardians. Under the circumstances •of this case it is a reasonable inference that Celia Zim
 
 *214
 
 merman, who was administratrix of the estate of Max Zimmerman, deceased, was the same person who was appointed guardian in the instant case. It is also a reasonable inference from these receipts that the wards were interested in the estate of Max Zimmerman and at the time of the appointment of the guardians the final account of Celia Zimmerman as executrix of the estate of Max Zimmerman could not have been approved by the Probate Court of Richland county where that estate was being administered. However, such inferences may be rebutted by the offering of all pertinent and material evidence. These matters should be cleared up by the Probate Court when the case is remanded.
 

 Assuming, but not deciding, that joint guardians were appointed in Ohio, the following statement of the law as found in 25 American Jurisprudence, 135, Section 214, is pertinent:
 

 “Where two or more persons are appointed guardians, their authority is joint and several; and if one of them dies, resigns, or refuses to act, all the rights and powers of the guardianship vest in the others. And where two are appointed jointly, either may qualify without the other, and will have full power as guardian if the other does not qualify. Where both have qualified, the authority vested in them is joint, and to be exercised by both together. It is a breach of trust for one to part, even temporarily, with his right of joint control, so as to preclude himself from using his authority if necessary. But it is not improper for two or more guardians to divide up the duties of the trust between them, and for one to leave the actual handling of a part of the business to his colleague, if he retains a general knowledge and supervision and the power to resume active control. The question is whether he exercised such reasonable prudence as one would have used in his own affairs. That the defendant receipted jointly
 
 *215
 
 with his colleague for certain funds is presumptive evidence that they came as much into his possession and control as into the possession and control of his co-guardian, and there must be direct and positive proof to rebut the presumption.”
 

 In 28 Corpus Juris, 1281, Section 476, it is said:
 

 “Joint guardians are jointly responsible for their joint acts; and each is separately answerable only for his separate acts
 
 ancl defaults,
 
 and not for the acts and defaults of his coguardians, unless he expressly or impliedly joins therein. A guardian remains liable for assets which were once in his hands, but which he has voluntarily turned over to his coguardian, especially where he afterward unites with his coguardian in settling a joint account.
 
 It has been held that a survivor of joint guardians will be presumed to have received the ivhole estate, in the absence of proof that the other guardian received and retained any portion thereof; * *
 
 * .” (Italics ours.)
 

 At page 1286, Section 481,
 
 ibid,
 
 it is said:
 

 “The guardian and sureties are liable where the guardian has been guilty of gross negligence in the management of the estate of the ward * * * . ”
 

 At page 1291, Section 490,
 
 ibid,
 
 it is said:
 

 “Some courts hold that, where two guardians jointly appointed for the same ward execute a joint bond, each is a security for the other, as to acts or defaults done or committed after, rather than before, the execution of the joint bond. Other courts hold the contrary. At any rate a surety on the joint bond is responsible for the separate acts of each guardian, as well as for the joint acts of all.”
 

 Passing to the Ohio statutory law, a guardian of the estate of a minor is appointed to
 
 take care of the estate
 
 in the manner prescribed by statute. If the guardian fails so to care for the estate of his ward and through such negligence loss results to the ward, the guardian
 
 *216
 
 and his bondsman are liable to account for that portion of the ward’s estate so lost.
 

 Before their appointment (or the appointment of either) it was necessary for Mrs. Zimmerman and Mr. Gunckel to file an application under Section 10920,, General Code, which provided at the time of their appointment :
 

 “Before a person is appointed guardian of the person and estate, or of the estate only, of a minor, he-shall file in the office of the court having such appointment to make, a statement of the whole estate of the minor, its probable value, and also the probable annual rents of the minor’s real estate, verify it by affidavit,, and give bond, with freehold sureties, resident of the state, one of whom shall reside in the county where such guardian is to be appointed, payable to the state,, in double the amount of the personal estate, belonging-to the minor, and of the gross amount of rents that probably will be received from such real estate during-his or her minority.” (Revised Statutes, Section 6259; 55 Ohio Laws, 54.)
 

 Section 10507-15, General Code, provides:
 

 “In addition to such other duties as are provided by law, every guardian appointed to take care of the estate of a ward shall have the following duties:
 

 “1. Within three months after his appointment to-make and file a full inventory, verified by oath, of the real and personal estate of his ward, with its value and the value of the yearly rent of the real estate. Failing-so to do for thirty days after he has been notified of the expiration of the time by the probate judge, the judge shall remove him and appoint a successor;
 

 “2. To manage the estate for the best interest of his ward;
 

 “3. To pay all just debts due from such ward out of the estate in his hands, and collect all debts due to
 
 *217
 
 the ward; in case of doubtful debts, to compound them,, •to appear for and defend, or cause to be defended, all suits against his ward;
 

 “4.
 
 To settle and adjust, when necessary or desirable, the assets which he may receive, in kind, from an executor or administrator, as may be most advantageous to his ward. Before such settlement and adjustment shall be valid and binding, it must be approved by the probate court, and such approval entered on its journal; with like approval, to hold the assets as received from the executor or administrator, or what may be received in the settlement and adjustment of such assets;
 

 “5. To obey all orders and judgments of the proper courts touching the guardianship;
 

 “6. When for the best interests of the ward, to bring suit in his behalf.” (This section is based on former Section 10933, General Code. Paragraphs 3, 4 and 7 of the old statute may be found in Section 10506-1
 
 et seq.)
 

 Old Section 10933, General Code, in effect prior to January 1, 1932, prescribed the duties of a guardian appointed to have the custody and take charge of the' estate of a minor, to wit:
 

 “1. Within three months after his appointment to make and file a full inventory, verified by oath, of the real and personal estate of his wards, with its value and the value of the yearly rent of the real estate. * *
 
 *
 

 “2.
 
 To manage the estate for the .best interest of his ward;
 

 “3. On oath, to render to the proper court an account of his receipts and expenditures, * * ’ *
 

 “4. At the expiration of-his trust, fully to account for and pay over to the proper person all of the estate of his ward in his hands.”
 

 In 20 Ohio Jurisprudence, 294, Section 79, it is said:
 

 
 *218
 
 “The statute [Section 10507-15, General Code, formerly Section 10933] makes it the duty of the guardian-to collect all debts due his ward. Where a ward’s-money or property is lost by the failure and negligence-of the guardian to collect the same, he is chargeable-with such sum; but to charge a guardian and his sureties, it must appear that, by the failure and neglect of the guardian to collect such sum, the same was lost to-the minor.”
 

 Section 80, page 295,
 
 ibici:
 

 “The power of a guardian over his ward’s real estate must, of necessity, be far less extensive than over his-personal property. The general duty of a guardian over the real estate of his ward is to manage it for the best interest of the ward, and to receive and account for the rents and profits.
 

 ■ “It is not permissible for the guardian to change real estate into personal except on the approval of the Probate Court. Therefore, he cannot sell the real estate of his ward, or any of it, without the order or decree of the Probate Court having jurisdiction in the matter * *
 

 Section 73, page 291,
 
 ibid,
 
 states:
 

 “It is inherent in the very nature of a guardianship over the estate of a ward that the guardian is entitled and bound to take the possession and management of all his ward’s property, real and personal.”
 

 In Section 91, page 301,
 
 ibid,
 
 it is said:
 

 “No duty is more clearly imposed by the very nature and purpose of a guardianship than to invest the ward’s funds in such a manner as to produce an income * * *.”
 

 Section 10506-41, General Code, and its predecessors, ■Sections 11214 and 11214-1, prescribe what investments may be made by a guardian.
 

 •Coming now to the question of the Probate Court’s
 
 *219
 
 jurisdiction and the scope of the accounting necessary in the case of a guardian:
 

 Section 1 of Article IV of the Constitution provides:
 

 “The judicial power of the state is vested in a Supreme Court, Courts of Appeals, Courts of Common Pleas, Courts of Probate, and such other courts inferior to the. Courts of Appeals as may from time to time be established by law.”
 

 Section 7 of Article IV provides in part:
 

 “There shall be established in each county, a Probate Court, which shall be a court of record, open at all times, and holden by one judge
 
 *
 
 * *.”
 

 Section 8 of Article IV provides:
 

 “The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators, and guardians, ?
 

 In the course of his opinion in
 
 Union Savings Bank & Trust Co., Exr.,
 
 v.
 
 Western Union Telegraph Co., supra,
 
 Judge Davis said (page 99) :
 

 “The Probate Court is a court of record and its jurisdiction in matters testamentary and in the appointment of administrators and guardians has been broadly given by the Constitution of this state, Article IV, Sections 7 and 8. The jurisdiction is plenary and it may well be doubted whether the Legislature, if it chose to do so, could in any respect limit it.” •
 

 Section 10501-53, General Code, provides:
 

 ‘£ Except as hereinafter provided, the Probate Court shall have jurisdiction: * * *
 

 “4. To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts; * * * '
 

 “Such jurisdiction shall be exclusive in the Probate Court unless otherwise provided by law.
 

 
 *220
 

 “The Probate Court' shall have plenary power at law and m equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by
 
 statute.” (Italics ours.)
 

 Section 10506-39, General Code, provides:
 

 “Such court may hear and determine all matters relative to the manner in which the fiduciary has executed his trust,
 
 and as to the correctness of his accounts, and also require any fiduciary so created within such county, on the determination of his trust, or removal, resignation, or on his death, his executor or administrator, to render a
 
 final account of the manner in which he executed his trust-,
 
 and such court may hear and determine all matters relating thereto.” (Italics ours.)
 

 In the cases of
 
 Newton
 
 v.
 
 Hammond,
 
 38 Ohio St., 430, and
 
 Gorman
 
 v.
 
 Taylor,
 
 43 Ohio St., 86, 1 N. E., 227, it was held that the jurisdiction of the Probate Court over the settlement of the accounts of guardians is exclusive.
 

 In 20 Ohio Jurisprudence, 370, Section 204, it is said:
 

 “The probafe judge may examine under oath all guardians touching their accounts. If he deems it proper to do so, he may reduce such examination to writing and require such guardian to sign it.' Such court may also hear and determine all matters relative to the manner in which the fiduciary has executed his trust, and as to the correctness of his accounts * * *.”
 

 In Section 208, page 373,
 
 ibid,
 
 it is said:
 

 “The determination of the Probate Court on the settlement of an account has the same force and effect as a judgment at law or a decree in equity * * *.”
 

 Section 209, page 374,
 
 ibid,
 
 states:
 

 “Where the Probate Court examines and approves the account filed by a guardian, this adjudication is conclusive between the guardian and his ward, and the judgment of the probate court in approving the
 
 *221
 
 account of the guardian is the end of any controversy between the guardian and his ward.”
 

 Section 225, page 386,
 
 ibid,
 
 states:
 

 “In an action upon a guardianbond for the recovery of the amount found due the ward upon a final settlement of the guardian’s accounts in the Probate ■Court, the sureties are concluded by the settlement, and will not be heard, in the absence of fraud and collusion, to question its correctness or to demand a rehearing of the accounts.”
 

 We agree so far as it goes with that part of the opinion of the Court of Appeals in which it is said:
 

 “We think under the statute [Section 10501-53] above quoted, and Section 10506-39, General Code, which we later quote, the Probate Court has the power to and should have cited into court the legal representative of the deceased coguardian’s estate and others if necessary, and made complete investigation to ascertain not only whether Gunckel did or did not receive the money, and if satisfied that he did not receive it, who did receive it and whether or not it is recoverable for the benefit of the former wards of the court. Not only the wards, but the sureties on the joint guardians’ bond are entitled to this consideration.”
 

 We agree with the syllabus in the case of
 
 Newton
 
 v.
 
 Hammond, supra,
 
 wherein it was held:
 

 “1. It is made the duty of guardians, by statute, when their wards arrive at age, to make final settlement of their accounts in the Probate Court.
 

 “2. The jurisdiction of Probate Courts over the settlement of such accounts is exclusive.
 

 “3. A right of action on a guardian’s bond to recover from the sureties the amount remaining in the ■hands of the guardian, first accrues to the ward when such amount is ascertained by the Probate Court on the settlement of the guardian’s final account.
 
 Bartlett
 
 v.
 
 Humphries, 7
 
 Ohio, part 1, 223, explained.”
 

 
 *222
 
 In addition to what is said in the third paragraph of the foregoing syllabus we include not only the amount remaining in the hands of the guardian but the amount which ought to remain in the hands of the guardian had he discharged his duties- according to law.
 

 The accounting of a guardian should include not only what has come into his hands but all of the estate of his ward which should have come into his hands through the exercise of reasonable diligence and that care of his ward’s estate which a reasonable man would have used in the conduct of his own affairs. We do not mean by this to go beyond the first paragraph of the syllabus in the case of
 
 Miller
 
 v.
 
 Proctor et al., Exrs.,
 
 20 Ohio St., 442, wherein it was held:
 

 “Where trustees act within the scope of their authority, and exercise such prudence, care and diligence as men of ordinary prudence, care and diligence manifest in like matters of their own, they should not be held accountable for losses happening from their management of the trust funds.”
 

 As illustrative of a guardian’s liability for what might have been recovered in the exercise of reasonable diligence and ordinary prudence, see,
 
 inter alia, Dumas
 
 v.
 
 Hollins,
 
 228 Ala., 644, 154 So., 781;
 
 Butler
 
 v.
 
 Legro, Gdn.,
 
 62 N. H., 350, 13 Am. St. Rep., 573;
 
 McLean v. Hosea et al., Gdns.,
 
 14 Ala., 194, 48 Am. Dec., 94;
 
 Stevens
 
 v.
 
 Meserve,
 
 73 N. H., 293, 61 A., 420, 111 Am. St. Rep., 612;
 
 Stem’s Appeal,
 
 5 Whart. (Pa.), 472, 34 Am. Dec., 569;
 
 Konigmacher, Gdn.,
 
 v.
 
 Kimmel,
 
 1 Penr. & W. (Pa.), 207, 21 Am. Dec., 374.
 

 The record in the instant case discloses no facts which would excuse Mr. G-unckel under the doctrine of
 
 State
 
 v.
 
 Guilford,
 
 18 Ohio, 500.
 

 The record here discloses that Mr. Gunckel made an application under oath to he appointed guardian of the estates of these minor wards. In such application
 
 *223
 
 lie represented under oath that the wards had both personal and real estate. Months after his appointment he receipted for substantial sums of money. What the final record in the case may disclose we do not know but under the record as it now stands this fiduciary, after having solicited the appointment and having receipted for substantial sums of money on behalf of his wards, cannot be heard to say that the estates of these wards are no concern of his and that he fully accounts for same when he says that contrary to his receipt and his duty in the premises, he received nothing and is not liable to account for anything. Upon oath he told the Probate Court that these wards had income-producing real estate. Was this real estate sold in accordance with law? Were the proceeds of the sale of this real estate invested according to law?
 

 As said in 25 American Jurisprudence, 128, Section 205, and 20 Ohio Jurisprudence, 396, Section 235:
 

 “In no relation, except perhaps that of parent and child or husband and wife, are the elements of confidence on-one side
 
 and active good faith on the other
 
 more essential than in the relation of guardian and ward.” (Italics ours.)
 

 As said by the Court of Appeals in this case:
 

 “Two important facts are established beyond dispute, viz.: That the $26,292.72 was paid over to the guardianship, and the wards never have received it. * * *
 

 “The record does not show by any evidence what did become of the money belonging to the wards. Some effort was made to open up this subject, but counsel for the wards objected on the ground of immateriality. The wards, by this proceeding, did not seek to establish this fact, being content apparently to proceed against one joint guardian on the basis of the receipts he had signed; nor did the court, under the plenary
 
 *224
 
 power vested in it by the last paragraph of Section 1Ü501-53, General Code, open up the complete investigation of the subject. The all-important fact — where is or what became of the money? — was not ascertained. . * * *
 

 “That the court having first jurisdiction over the minor and his property and welfare has full power to take all necessary steps on its own motion and initiative to protect such minor and his estate, there can be no question. Upon a record such as here presented we think the exercise of the power becomes a duty.”
 

 The Proba.te Court has a plain duty and plenary power to require Mr. Gunckel, if he be the sole guardian, either by virtue of. original appointment or survivorship,. and both of the guardians, through the personal .representative of the deceased one, if appropriate, to account fully for their care or lack of care of the assets .belonging to the estates of these wards. It is the duty of the. Probate Court to fix the liability,' if any, to the wards of these guardians, and each or eithfir of them, and their bondsmen. Until the Probate Court fixes this liability, no cause of action accrues to the wards upon the guardian’s bond.
 
 Newton
 
 v.
 
 Hammond, supra.
 

 In 20 Ohio Jurisprudence, 291, Section 73, it is said:
 

 “It is inherent in the very nature of a guardianship over the estate of a ward that the guardian is entitled and
 
 bound
 
 to take the possession and management of all his ward’s property, real and personal.” (Italics ours.)
 

 Paraphrasing the language of the then Mr. Justice Field in
 
 Western Union Telegraph Co.
 
 v.
 
 Davenport,
 
 97 U. S., 369, 24 L. Ed., 1047: It is not possible to preclude minor heirs from asserting their rights to property received from their father by reason of any negligence of their guardian. ' ' ■ '
 

 
 *225
 
 The terms “account” and “accounting” are often loosely used. The correct meaning of these terms will depend upon whether we are referring to common-law accounting, equitable accounting or accounting by a fiduciary in the probate court. We are here concerned with a fiduciary’s accounting. As stated in 1 Words and Phrases, 543:
 

 “An ‘accounting’ involves not only a statement of debits and credits by the trustee, but also a responding to liability incurred on account of losses negligently sustained in the management of the trust fund.”
 

 Bearing in mind that a guardian’s duty under the statutes of Ohio is to
 
 care
 
 for the estate of his ward, the holding in the case of
 
 State
 
 v.
 
 Guilford, supra,
 
 is pertinent. The syllabus which summarizes that holding reads:
 

 “Where a loss accrues to a trust fund through the default of one of five trustees, his co-trustees will not be held responsible for such loss
 
 if they have acted in good faith and exercised that vigilance over the fund which a man of ordinary prudence will exercise over his own
 
 property.” (Italics ours.)
 

 In 25 American Jurisprudence, 100, Section 160, it is said:
 

 “When the account is rendered, the court may disallow any items which are improper and
 
 surcharge the account with sums for which the guard,ian should be liable, but with which he has not charged
 
 himself.” (Italics ours.)
 

 In 25 American Jurisprudence, 107, Section 174, it is said:
 

 “A guardian is chargeable in his accounts not only with all of the estate of his ward, real and personai, and the proceeds thereof which actually came into his hands, such as rents and the proceeds of a sale of the ward’s property, but also with money or property lost by reason of his negligence or failure of duty, or which
 
 *226
 
 he might have recovered and received by the exercise of reasonable diligence and ordinary prudence.”
 

 See, also, note in 40 L. R. A. (N. S.), 223, and Willis v.
 
 Fox,
 
 25 Wis., 646.
 

 In other words, an accounting embraces the entire conduct, both of commission and omission of the guardian in respect of his ward’s estate.
 

 If it is found that the mother was only a guardian
 
 de facto,
 
 her personal representatives may be still held to account. Even though it be held that the mother was not even a guardian
 
 de facto,
 
 her personal representatives may still be called upon to account under Section 10506-67, General Code, which provides:
 

 ■ “Upon complaint made to the probate court or common pleas court of any county by a fiduciary, creditor, devisee, legatee, heir or other person interested in the trust estate, or by the creditor of any devisee, legatee, heir, or other.person interested in the trust estate, against the fiduciary or any other person suspected of having concealed, embezzled or conveyed away or of being .or having been in the possession of any moneys, goods, chattels, things in action, or effects of such estate, said court shall cite the person so suspected forthwith to appear before it to be examined, on oath, touching the matter of the complaint. The probate court shall also have power to initiate proceedings on its Own motion. ”
 

 As held by this court in the case of
 
 Goodrich, Admr.,
 
 v.
 
 Anderson,
 
 136 Ohio St., 509, 26 N. E. (2d), 1016:
 

 . “The purpose of Sections 10506-67 to 10506-77, inclusive, General Code, relating to proceedings to discover concealed or embezzled assets of an estate, is-not to .furnish a substitute for a civil action to recover judgment..for money owing to an administrator or executor, but rather to,provide a speedy and effective-method for discovering assets belonging to the estate and to secure possession of them for the purpose of administration. ’ ’
 

 
 *227
 
 While we agree with that part of the journal entry •of the Court of Appeals by which this cause is re.manded to the Probate Court for further proceedings, we cannot agree with the court’s judgment of affirmation of the Probate Court’s order of July 2,1941, over.ruling the exceptions filed to the account of William „H. Gunckel, as guardian, and discharging him.
 

 The judgment of the Court of Appeals is, therefore, .reversed and this cause remanded to the Probate ■Court of Lucas county for further proceedings according to law.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and 'Bell, JJ., concur.
 

 Williams, J., concurs in the judgment.