Middleton, J.
The testator directed that his estate be divided into four equal shares, two of which he bequeathed to his wife, Roberta H. Miller, for life, one share to his son, Edward W. Miller, for life, and the other share to the daughter, Prances Ann Miller Brandon, for life. The widow elected to take under the law, which somewhat changed the amount which passed to the son and daughter, but that election did not otherwise affect the testamentary provisions with respect to their shares. The approximate value of the share in which the daughter received a life estate was $450,000.
The pertinent portions of the will appear in item III (c) thereof and are as follows:
“ (c) One share to my daughter, Prances Ann Miller *533 Brandon, for life, and at her death snch share shall be divided into the number of equal parts that will provide :
“One part for each of my said daughter’s children who are living at the time of the death of my said daughter, to each of whom, if then living, I give and devise one of such parts, absolutely and in fee simple; and
“One part for the issue living at the time of the death of my said daughter, of each of such of her children who may then be deceased and I devise and bequeath one of such parts to such issue of each such deceased child, such issue to take and share such part per stirpes and not per capita, absolutely and in fee simple.
“Each of said Roberta M. Miller, Edward W. Miller and Frances Ann Miller Brandon shall have full power and authority, during her or his life, but separately and each only with respect to those shares or that share which she or he shall then possess and enjoy as the then life tenant, generally to manage, control, invest and reinvest the principal of such share or shares including, without implied limitation, full power and authority to sell, convey, exchange or otherwise dispose of the property comprised in such person’s shares or share; to buy, lease or otherwise acquire property of any kind; to register shares, bonds or other securities in such life tenant’s name alone, without description of the nature of the estate of such life tenant;' to exercise all rights, powers and authorities, including all voting and other rights, incident to the ownership of any property from time to time comprised in such shares or share; to compound, compromise, settle and adjust all claims or demands which may or might be asserted by the owner of such property or to the satisfaction of which such property might be subject; and all such power and authority may be exercised by such person, the then life tenant of such shares or share, as *534 such person may deem proper and notwithstanding any statute or rule of law or equity to the contrary. By the grant of such powers I intend only to facilitate the management of such shares or share by the then life tenant thereof and I do not intend to create a fee simple title or other estate than a life estate in such life tenant.
“It being my intention to facilitate the use of such shares by the respective life tenants thereof, I direct that my property shall not be held by my executors or by any trustee or trustees for the benefit of any life tenant, but that my executors shall deliver to the respective life tenants aforesaid the property which is allocated to their shares and the executors shall thereupon be relieved of all liability for the property so delivered and the court shall not have authority to direct otherwise.”
Following the above are comprehensive provisions with respect to the treatment of income from the estate and other related matters. Then follows:
“No life tenant shall be held responsible for loss or depreciation in value of assets which shall, at any time, be or become a part of the share or shares held by such life tenant nor shall any such life tenant be liable for mistakes in judgment, whether of law or of fact, or for negligence in the management in good faith of the assets comprising such share or shares and shall only be required to exercise the powers herein granted in good faith and shall be liable only for wilful and fraudulent exercise of such powers. No bond shall be required of any life tenant. ’ ’
The facts disclosed by the evidence presented at the hearing on the application posed for the Probate Court a problem which was unusual and difficult of solution. As indicated by the findings of fact which were included in the decision and order of the Probate Court, the following facts were established:
*535 From 1946 to April 1948, the daughter borrowed $58,620.64 from her father, which loan was evidenced by a promissory note, and $250, which loan was not so evidenced, all of which debt was unpaid at the time of the testator’s death. By order of the Probate Court the executors had retained from amounts of income distributable to the daughter the sum of $25,311.14 for the purpose of applying the same to the above-mentioned indebtedness. The daughter, together with her family, moved to the state of California in June 1945 where she established her permanent residence. From January 1945 until March 1951, the daughter received from her grandfather’s estate the sum of $215,323.58, she received as distribution from the estate of her father (the testator herein) the sum of $102,422.73, and she borrowed the sum of of $37,500 from the City National Bank & Trust Company. During the years 1947 and 1948, her husband received approximately $40,000. The daughter and her husband, therefore, from January 1945 up to and including the year 1950, received the sum of $453,866.95.
The court found as a fact from the financial statement furnished by the daughter that her assets, including automobiles and household furniture, had a value in 1951 “but slightly in excess of the amount of her indebtedness to her father’s estate. ’ ’
In a decision dated in June 1952, which was immediately prior to the order entered on the application, the court found further:
“Her present financial statement shows that she is indebted to the City National Bank & Trust Company in the amount of $58,000, less the credits thereon, and that her personal wealth is less than the amount of her note. She is, therefore, substantially insolvent.”
Under the circumstances so disclosed, what order should have been made by the Probate Court for the protection of the children of the daughter, who are the *536 remaindermen under the will and to what extent was the court empowered by law to act for their protection? In pondering this problem and seeking its solution, the probate judge manifested a full understanding of and regard for the traditional respect in American jurisprudence for the will of a decedent and the well established law that the intent and desire of the' testator should be determined and followed so far as the law permits.
It was argued by counsel for the daughter that the father knew her financial condition at the time he wrote the will. As to this contention the court found:
“The testimony does not sustain this allegation. * * # There is nothing in the record which indicates that Mr. Frederick A. Miller knew that Mrs. Brandon was dissipating her estate. * * * There is nothing to indicate, either knowledge or lack of knowledge on his part as to her ability to handle and conserve the estate of which she was the recipient. ’ ’
The probate judge recited further in his decision on application for rehearing that he had received information that in the early part of 1948 the testator had indicated an intention to rewrite his will but that any contemplated changes in his will were only a matter of conjecture. The testator was stricken with illness on March 22, 1948, from which illness he died on May 6, 1948. The declared intention of the testator shortly before his death to revise his will afforded no assistance in the solution of the problem faced by the Probate Court.
The Probate Court and the Court of Appeals in' their comprehensive opinions and orders gave full consideration to the jurisdiction of the Probate Court and to the laws controlling or limiting the right to make testamentary disposition of property. With the conclusions with respect thereto stated by the Court of Appeals, this court is in full accord.
*537 The constitutional provision with respect to the jurisdiction of the Probate Court is contained in Section 8, Article IV of the Constitution, which provides:
“The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians * * * and such other jurisdiction, in any county, or counties, as may be provided by law. ’ ’
The complete jurisdiction of the Probate Court is, therefore, conferred by direct constitutional grant and by legislation enacted pursuant to constitutional authority. The General Assembly, however, may not by legislation restrict or detract from the fundamental jurisdiction granted directly by the constitutional provision. Pursuant to the constitutional authority above-mentioned, the General Assembly enacted Section 10501-53, General Code (Section 2101.24, Revised Code), which provides in part:
“The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute. ’ ’
This court has consistently held that jurisdiction is conferred upon the Probate Court by the constitutional provision above quoted, and has recognized the power of the General Assembly to define the jurisdiction and powers of the Probate Court consistent with but not in limitation of the jurisdiction constitutionally granted. Union Savings Bank & Trust Co., Exr., v. Western Union Telegraph Co., 79 Ohio St., 89, 86 N. E., 478, 128 Am. St. Rep., 675; Trumpler, Admr., v. Royer, 95 Ohio St., 194, 115 N. E., 1018; In re Guardianship of Zimmerman et al., Minors, 141 Ohio St., 207, 47 N. E. (2d), 782.
With these basic principles in mind, we come to a consideration of Section 10509-185, General Code (Sec *538 tion 2113.58, Revised Code), which is the statutory-provision to be construed and applied in the instant ease. Before discussing that section, however, we should briefly consider the power of the General Assembly to limit or restrict testamentary disposition of property. There is no inherent right to make a will.' In Sears v. Sears, 77 Ohio St., 104, 116, 82 N. E., 1067, 17 L. R. A. (N. S.), 353, Judge Summers in his opinion said: “In this state the right of disposing of property by will is given, and the manner of exercising it is prescribed by statute.”
In Lozier v. Lozier, 99 Ohio St., 254, 256, 124 N. E., 167, this court in a per curiam opinion stated:
“Property does not pass under will by any natural right. Its transmission by way of inheritance or otherwise, after death, is solely by virtue of our statutes. ’ ’
This general statement of the law is well supported by texts, including 1 Page on Wills (Lifetime Ed.), 49, Section 25; Thompson on Wills (3 Ed.), 37, Section 17; 57 American Jurisprudence, 74, Section 52. See, also, Hane v. Kintner, 111 Ohio St., 297, 300, 145 N. E., 326; Sherman, a Minor, v. Johnson, 159 Ohio St., 209, 219, 112 N. E. (2d), 326.
Testamentary disposition of property has long been completely controlled in Ohio by statutes. As illustrating this control it may be noted that our statutes provide who may make a will, how it is to be made, as to the effectiveness of an agreement to make a will, how production of a will may be enforced and as to the effect of withholding it from probate, the manner of probating and contest, the manner of probate and consideration to be given a lost, spoliated or destroyed will, the manner of revocation, and as to the effect of alteration.
Furthermore, our statutes contain many provisions which limit the right of testamentary disposition and annul provisions in a will which are contrary to such statutes. For example, a bequest for certain pur *539 poses generally referred to as a charitable bequest is invalid unless the will is executed at least one year prior to the death of the testator if the testator dies leaving certain designated issue or heirs. Section 10504-5, General Code (Section 2107.06, Revised Code). A devise or bequest to a person who is a witness to the will, which can not be proved except by his testimony, is declared void by Section 10504-19, General Code (Section 2107.15, Revised Code). The rights of inheritance of a pretermitted child or heir for whom no provision is made in a will are protected by Section 10504-49, General Code (Section 2107.34, Revised Code), notwithstanding the provisions of the will. The surviving spouse may elect to take under the statute of descent and distribution rather than under a will, pursuant to Section 10504-55, General Code (Section 2107.39, Revised Code), thus materially changing the testamentary disposition. A convicted murderer can not take under the will of the person whom he murdered. Section 10503-17, General Code (Section 2105.19, Revised Code). Entailment by will is limited by Section 10512-8, General Code (Section 2131.08, Revised Code).
Thus it is seen that examples of legislative control of testamentary disposition exist in great numbers. A testator is charged with knowledge of the power of the court in such matters. See Flynn v. Bredbeck, 147 Ohio St., 49, 68 N. E. (2d), 75.
We come now to a consideration of Section 10509-185, General Code (Section 2113.58, Revised Code). This section became effective January 1, 1932, as an entirely new statutory provision. The purpose of this new law, as indicated by the comments of the Probate Code Committee which proposed its adoption and more particularly by the language of the act itself, is the protection of the remainderman’s interest in personal property. The section in its entirety reads:
“When by a last will and testament the use or in *540 come of personal property is given to a person for a term of years or for life, and some other person has an interest in snch property as remainderman, the court, unless such last will and testament otherwise provides, shall have authority to deliver such personal property to the person having the limited estate, with or without bond, as the court may determine; or the court may in its discretion order that such property be held by the executor or some other trustee, with or without bond, for the benefit of the person having the limited estate. If bond is required of the person having the limited estate, or of the trustee, it may be increased or decreased, and if bond is not required in the first instance it may be required, at any time prior to the termination of the limited estate, at the discretion of the court.”
That the General Assembly had full power to enact this statute can not be questioned. The problem faced by the Probate Court, the Court of Appeals and by this court is the construction to be placed upon the statute. The controversy centers around the clause, “unless such last will and testament otherwise provides,” which appears in the first half of the section, and around the significance of the semicolon and the word, “or,” which appear about midway in the section. It is contended by the daughter — the life tenant —that the words, “unless such last will and testament otherwise provides,” apply to and condition the provisions of the latter clause, that is, the portion following the semicolon and introduced by the word, “or,” as well as to the preceding portion of the section. The Court of Appeals held adversely to such contention and this court agrees with the Court of Appeals. If the intent of the General Assembly were such as is claimed by the life tenant this section would have been worded and punctuated differently. The second clause — that following the semicolon — is a complete *541 sentence having a subject, a verb and an object of its own. A semicolon separates it from the preceding portion of the section. The grammatical rule that clauses separated by a semicolon should be related in thought but must be independent in that each clause is complete in itself is satisfied.
It is also significant that in the clause following the disjunctive, ‘ ‘ or, ” the word, ‘ ‘ court, ’ ’ is repeated. The clause reads, ‘ ‘ or the court may in its discretion order that such property be held by the executor or some other trustee, with or without bond, for the benefit of the person having the limited estate.”
It is our conclusion that the clause of the section, following the semicolon and introduced by the word, “or,” is a distinct grant of power not conditioned or affected by the words, “unless such last will and testament otherwise provides,” which appear in the portion of the section which precedes the semicolon, and that the court may exercise the power granted in the clause introduced by the word, “or,” where the circumstances are such that sound discretion justifies the court in so acting. In the exercise of the power so granted the court is unhampered and unrestrained by the preceding clause reading, “unless such last will and testament otherwise provides.”
In this case there is no evidence that the Probate Court acted captiously or arbitrarily. On the contrary, the almost unique and, to the court, alarming-facts developed by the evidence convinced the court that the duty imposed by the statute to protect the remaindermen could not be discharged if the assets in which the daughter was given a life interest should be turned over to her. The estate consists largely of shares in Ohio corporations. If so surrendered to the life'tenant the assets would be immediately removed from the jurisdiction of the court to California where she has her residence and where she intends to con *542 tinue to reside. During the period from 1946 to 1951 the daughter expended the sum of $453,866.95 and in 1951 had no net assets whatever “but was substantially insolvent. ’ ’ These facts fully justify the discretion exercised by the Probate Court and the resulting order directing the surrender of the assets to a trustee. Nothing short of such order would have protected the young children who as remaindermen are entitled to receive the estate upon the death of their mother. The decision reached by the Probate Court and the order made are wholly consistent with the intent of the testator expressed in the clause of the will which reads: ‘ ‘ By the grant of such powers I intend only to facilitate the management of such shares or share by the then life tenant thereof and I do not intend to create a fee simple title or other estate than a life estate in such life tenant.”
Considering the propensity of the daughter to squander all money that came into her possession, the court was justified in concluding that delivery of the assets to her would have had the same final result as though she had been given “fee simple title” under the will. The daughter’s assignments of error to this court are two in number and in substance as follows, first, that the Court of Appeals created a new will for the testator and, second, that the court erred in construing Sections 10501-53 and 10509-185, General Code (Sections 2101.24 and 2113.58, Revised Code), as giving judicial authority for the order made by the Probate Court. It is the view of this court that neither assignment of error is well taken.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Hart, Zimmerman, Stewart and Lamneck, JJ., concur.