DECISION.
This is an appeal by Richard Kelsch, the former administrator of the estate of Ruth Minella, and Richard's sister, Marilyn Kelsch, from the judgment of the Probate Division of the Hamilton County Court of Common Pleas surcharging Richard in excess of $46,000 for extraordinary expenses incurred by the estate as the result of his allegedly negligent and fraudulent behavior.
 FACTS AND PROCEEDINGS
On April 30, 1991, Ruth Minella died, leaving five adult siblings, Mary Kelsch, Florence Johnson, Esther Minella, Minot Minella, and Ralph Minella. On July 1, 1992, Richard, the decedent's nephew and the son of Mary Kelsch, presented to the probate court what purported to be the last will and testament of the decedent.[1] Richard also applied to administer the estate.
The next day, the probate court admitted the will and appointed Richard administrator. Richard, in turn, filed an inventory reflecting that the estate's assets totaled approximately $200,000. He did not, however, timely file an account. As a result, the probate court sent him a notice of delinquency on March 1, 1994. Thereafter, Richard applied for an extension of time in which to file the account; he explained that his delinquency was due, in part, to his failure to retain counsel until March 1994 and, in part, to the occurrence of a fire in his home. Although the probate court granted the extension, it sent Richard a second delinquency notice on July 5, 1994, when the account was still not forthcoming. Finally, on September 19, 1994, Richard filed his first account. Thereafter, the probate court instructed Richard to file, on or before December 1, 1994, his final account.
On December 1, 1994, Richard's counsel, who also represented the estate's interests, appeared before a magistrate of the probate court and reported that the final account had not yet been completed. Richard did not appear. By entry of December 8, 1994, the magistrate recommended that Richard be removed as fiduciary. In support of his recommendation, the magistrate cited Richard's failure to timely file a final account, his failure to appear as ordered for a status conference on September 27, 1994, and for the December 1, 1994, hearing, and his disparate treatment of beneficiaries of the estate with regard to distributing assets. On February 14, 1995, after hearing arguments on Richard's objections to the magistrate's report and recommendation, the probate court adopted the magistrate's report, thereby removing Richard as administrator. Thomas Kelsch, Richard's brother, was appointed as successor administrator, and administration of the estate continued.
Subsequently, as reflected by its February 29, 1996, entry, the probate court received "substantial, credible evidence that the will offered for admission to probate by Richard C. Kelsch [was] not the last Will and Testament of Ruth E. Minella." The court scheduled the matter for hearing on March 14, 1996, before a magistrate of the court, sending notice of the hearing to all interested parties.[2] Although Richard and Marilyn both received notice of the hearing, neither appeared. They later informed the probate court that, because a criminal investigation regarding the allegedly fraudulent will was pending, their criminal defense counsel had advised them not to appear at the hearing. Nonetheless, the magistrate conducted an evidentiary hearing on the issue of the will's validity.
In his decision on the matter, which was journalized on March 18, 1996, the magistrate found that "Richard Kelsch, acting alone or in concert with Marilyn Kelsch and Mary C. Kelsch, knowing[ly] presented a fraudulently executed will to probate with purpose to deprive lawful heirs at law of their inheritance." The magistrate also found that Charles, Thomas, and Joseph Kelsch did not participate in the preparation or execution of the will. Based on these findings, the magistrate recommended that (1) the document purporting to be the last will and testament of Ruth Minella be set aside; (2) the distributions from the estate made by Richard to himself, his mother, and his siblings be restored; and (3) an independent administrator be appointed by the court.
Although no transcript of the hearing exists, the magistrate's decision reflects that his finding that Ruth Minella's "last will and testament" was fraudulently executed was based on the fact that the purported will bore an execution date of January 12, 1982, but was printed on a legal form that was not available for use until 1986. Furthermore, the decision reflects that the magistrate's finding of fraudulent behavior by Richard, Marilyn, and Mary was based in part on a typewritten letter that was introduced into evidence at the hearing. This letter bears a date of December 23, 1992, and a typewritten closure of "Regards, R.R. Kelsch;" it does not contain a handwritten signature. In the letter, which is addressed in memorandum format to Marilyn, Thomas, Charles, and Joseph Kelsch, the author states that he forged Ruth Minella's will and requests the recipients of the letter to sign the letter in acknowledgment of their status as co-beneficiaries of the fraud and as a precondition to receiving distributions under the forged will.
Richard and Marilyn subsequently filed objections to the magistrate's decision, wherein they challenged his finding of wrongdoing on their part and on the part of their deceased mother. Attached to these objections were their own affidavits denying any involvement in the preparation or execution of the fraudulent will. On April 12, 1996, the probate court adopted the magistrate's recommendations that the will be set aside as fraudulently executed, that an independent administrator be appointed, and that all prior distributions be restored to the administrator. The court, however, set a hearing on the contested portion of the magistrate's decision.
At the nonevidentiary hearing on the objections, Richard and Marilyn argued that the magistrate's finding of fraudulent conduct on their part was erroneous because it rested on the December 23, 1992 letter, purportedly authored by Richard, which was never properly authenticated and which constituted inadmissible hearsay. Following this hearing, the probate court ordered the magistrate to prepare supplemental findings of fact regarding the disputed issue. On May 13, 1996, the magistrate's supplemental decision was journalized. In this decision, the magistrate detailed testimony that had previously been offered at the March 14, 1996, hearing regarding the letter. The magistrate recounted that Thomas, Charles, and Joseph Kelsch each had testified that they, individually, received visits from their sister, Marilyn Kelsch, and their mother, Mary Kelsch, one evening between Christmas and New Year's Day of 1992. They testified that their sister and mother had handed them the typewritten letter in question and told them that Richard wanted them to sign it if they wanted their money. Thomas testified that, after reading the letter, he refused to sign it. He also testified that he had not immediately reported the letter to the probate court because he had not known whether to take it seriously. But, upon being appointed successor administrator, he decided to provide counsel for the estate with a copy of the letter[3] so that the matter could be addressed by the proper authorities. Charles, on the other hand, testified that he signed the document without reading it, believing it to be a probate form of some sort. He also recalled that Marilyn's signature was already on the document. Finally, Joseph testified that he had not read the letter prior to signing it, but made a copy of it on his home fax machine.
Based on this and other testimony and evidence, the magistrate concluded that "there is no doubt that an egregious fraud has been perpetrated upon the court by offering a forged will to probate." The magistrate also concluded that "a reasonable inference can be drawn from the testimony in this case that Richard R. Kelsch * * * directed his mother and sister to secure the signatures of his siblings to the letter dated December 23, 1992."
Richard and Marilyn again filed objections. The probate court held a hearing on these objections on June 19, 1996, and by entry of June 27, 1996, it overruled the objections, thereby sustaining the magistrate's decision. Specifically, the probate court ruled that "the Magistrate's Supplemental Findings of Fact contained sufficient evidence that comports with the Ohio Rules of Evidence to warrant sustaining the Magistrate's finding and recommendations in their entirety."
Richard and Marilyn appealed the probate court's decision to this court, but voluntarily dismissed that appeal on December 13, 1996. In the meantime, the independent administrator appointed by the probate court filed an application to surcharge Richard, in his capacity as removed administrator, for extraordinary costs and expenses incurred by the estate as a result of the improper and unnecessarily lengthy administration occasioned by his admission of the fraudulent will and by his failure to faithfully discharge his fiduciary duties. Specifically, the administrator sought surcharges for the following:
 (1) Attorneys' fees and extraordinary attorneys' fees resulting from prolonged administration;
(2) Unnecessary bond premiums;
(3) Additional probate court filing fees;
(4) Extraordinary fiduciary's fee;
 (5) Interest on delinquent filing of Ohio Estate Tax Return;
(6) Bank service charges and wire transfer fees;
(7) Charles Schwab wire transfer fees;
(8) Interest on delinquent filing of federal tax form;
 (9) Extraordinary administration expenses; and Liability for failure to invest.
The administrator also filed exceptions to Richard's two accounts, which were still pending for approval by the probate court. The purpose of the administrator's exceptions was to correct the accounts to reflect the improper distributions made by Richard under the fraudulent will. On September 17, 1996, the probate court approved and settled Richard's accounts as corrected. In so doing, the court specifically ordered that Richard would not be discharged from his trust until it ruled on the administrator's pending motion for surcharge.
Thereafter, the administrator applied to the probate court for an order fixing ordinary and extraordinary attorney fees for services rendered on behalf of the estate in the amounts of $3,513.50 and $13,147.25, respectively. The probate court set the matter for hearing, sending notice of the hearing to all interested parties, including Richard's counsel. No objections to the application were filed. Following the hearing, the probate court, by entry of December 16, 1996, fixed ordinary and extraordinary attorney fees to counsel for the estate in the amounts of $3,000 and $13,147.25, respectively.
On December 23, 1997, the motion for surcharge came on for a hearing. At this hearing, Richard moved the probate court to dismiss the matter, arguing that it lacked jurisdiction. The court denied this motion. The administrator then presented his case-in-chief, which consisted of his own testimony and the introduction of documents in support of the claimed costs and expenses. Richard presented no testimony or exhibits.
In its April 9, 1998, entry, the probate court found that, but for Richard's introduction of the fraudulently executed will and his subsequent negligent administration of the estate, the assets of Ruth Minella's estate would have been distributed to her five siblings within one year. Accordingly, the court concluded that Richard was liable for the losses this conduct caused the estate. The probate court then assessed the following liabilities to Richard:
Ordinary and extraordinary attorneys' fees:
 The court imposed a surcharge of $19,147.25. [This surcharge incorporated the $13,147.25 for services rendered between March 1994 and August 1996 as fixed by the court's previous order and $6000 for services rendered after that date.]
 Unnecessary bond premiums:
 The court imposed a surcharge of $1,012.25 for bond premiums incurred after July, 1993.
 Additional filing fees:
The court imposed a surcharge of $559.
Extra-ordinary fiduciary's fee:
 The court denied the request for a surcharge on this item.
 Interest on delinquent filing of Ohio Estate Tax Return:
The court imposed a surcharge of $1,134.68.
Bank service charges and wire transfer fees:
The court imposed a surcharge of $114.
Charles Schwab wire transfer fee:
The court imposed a surcharge of $15.
Interest on delinquent filing of federal tax form:
The court imposed a surcharge of $79.01.
Liability for failure to invest:
The court imposed a surcharge of $24,575.91.
 In this appeal, Richard and Marilyn advance eight assignments of error, challenging the trial court's determination that they engaged in fraudulent conduct and its imposition of surcharges on Richard.
 Before we turn to the merits of the appeal, we must address a matter of procedure. Our review of the notice of appeal and of the record in this matter reveals that Marilyn is not a proper party to this appeal. The final order jointly appealed from by Richard and Marilyn is the probate court's entry of surcharge. This entry affected only Richard; it did not relate to Marilyn. Marilyn was not aggrieved by this order; therefore, she does not have standing to appeal from it.[4] And although Marilyn seeks to challenge the probate court's determination that she was involved in the fraudulent execution of the will, this determination, made in 1996, was not itself a final appealable order.[5] Moreover, even if this determination had been a final appealable order, Marilyn would be barred from challenging it now because her time for appeal expired long ago. Therefore, we dismiss Marilyn as a party to this appeal.
 Because Richard remains as a proper party to this appeal, we now examine his assignments of error.
ASSIGNMENTS AND ANALYSIS
 In his first assignment of error, Richard asserts that his due process rights were violated where previous findings of fraudulent conduct on his part, relied upon by the probate court in assessing the surcharge against him, were based upon evidence presented at a hearing at which he was not present.
We first note that the probate court's entry surcharging Richard was based on its findings of both fraudulent and negligent conduct. Because Richard does not claim that he was denied due process when he was removed for negligent administration of the estate, even if we were to accept the argument set forth in this assignment regarding the finding of fraud, it would not follow that all of the probate court's surcharges need be set aside. Nevertheless, for the reasons detailed below, we do not accept Richard's contention that the probate court denied him due process by incorporating its previous finding of fraud into its order surcharging him.
Although Richard concedes that he received notice of the hearing to set aside the will and that his failure to appear at the hearing was based on the advice of his criminal defense counsel, he makes two arguments in support of his contention that his due process rights were violated. First, he challenges the reasonableness of the notice provided to him. He argues that, because he was no longer a fiduciary of the estate, the probate court's notice of hearing to set aside the will was not reasonable because it did not inform him that his interests might be adversely affected as a result of the hearing. We are unpersuaded by this argument. Although Richard was no longer serving as administrator at the time of the hearing, his previous actions as administrator under the purported will were clearly called into doubt by the probate court's sua sponte
entry questioning the will's validity. Accordingly, we reject Richard's argument that the notice provided to him was unreasonable.
Next, Richard contends that he was not provided with a reasonable hearing. He submits that once the criminal investigation regarding the will was terminated and he was no longer under threat of prosecution, the probate court should have afforded him an opportunity to put on testimony to rebut the magistrate's recommended finding of fraud. According to him, the probate court's failure to offer him such an opportunity violated his due process right to a reasonable hearing. We cannot agree. Richard was provided with an opportunity to be heard. That he chose not to take advantage of that opportunity, even if such choice was based on concerns of self-incrimination,[6]
did not translate into an obligation on the part of the probate court to afford him a second opportunity for a hearing on the same matter. Accordingly, we overrule Richard's first assignment of error. For purposes of analysis, we address Richard's second and third assignments of error together. In these assignments, Richard asserts that the trial court erred in granting the administrator's motion for surcharge, because this motion was based on the court's prior finding of fraud, which rested on inadmissible evidence. Alternatively, he argues that even if the evidence relied upon by the court was admissible, it was not sufficient to support a finding of fraud.
As a matter of appellate procedure, we are precluded from reviewing the issues raised by these assignments of error because Richard has failed to transmit a transcript of the hearing at issue to this court, as App.R. 9(B) and 12(A)(2) require. Without the ability to review a transcript, we can do no more than speculate as to how and for what purpose specific testimonial and documentary evidence was introduced. Moreover, we are certainly not able to determine whether insufficient evidence was presented to support the court's finding of fraud. It is our understanding that, because no request for a recording of the hearing at issue was made prior to or at the time the hearing was held, no transcript could thereafter be obtained. The fact that no transcript exists, however, does not relieve Richard of his obligations under the appellate rules. And although the magistrate's reports, which are of record, do contain findings summarizing some aspects of the proceeding, these findings are not sufficient for our purposes to act as a substitute for an actual transcript of the proceeding. Accordingly, we cannot sustain either the second or the third assignment of error.
In his fourth assignment of error, Richard contends that the probate court erred in surcharging him for the estate's extraordinary attorney fees.
The probate court's fee award in this case was based on the exception to the American Rule, which permits an award of attorney fees to the prevailing party where the losing party has acted in bad faith.[7] Although Richard acknowledges this, he argues that the record contains insufficient evidence of the reasonableness of the fees to support the award. We cannot agree.
The probate court's $19,147.25 surcharge for extraordinary attorney fees was based on two separate fee awards, one for $13,147.25 (for services rendered to the estate through August 1996), which the trial court approved as reasonable after holding an evidentiary hearing, and the other for $6,000 (for services rendered after August 1996), made following the administrator's presentation of evidence in support of the claimed fees at the hearing on the motion for surcharge. Although the record in this matter contains no transcript of the hearing on the first fee award, the administrator's motion in support of those fees included, as exhibits, detailed billing records. And the transcript of the surcharge hearing contains detailed testimonial and documentary evidence with respect to the fees claimed. Based on these circumstances, we conclude that the probate court had before it sufficient evidence to judge the reasonableness of the fees claimed.
Richard also argues, however, that the probate court erred by incorporating its prior award of $13,147.25 in fees into its order of surcharge. According to Richard, in doing so, the court gave this previous award "res judicata effect" and deprived him of the opportunity to litigate the reasonableness of those fees. We disagree.
Res judicata refers to the binding effect of a prior final judgment on the merits on a second, subsequent action involving the same issues and the same parties.[8]
This doctrine has no application to the instant situation. Here, the probate court simply took judicial notice of its own order,[9] entered earlier in the very same estate-administration proceeding.[10] Further, the record in this matter demonstrates that Richard was not precluded from contesting the reasonableness of the fees claimed. He was served with notice of the hearing to fix the fees and was aware that he might later be surcharged for those fees, because, at the time the notice was served on him, the administrator's motion for surcharge was pending. Furthermore, the probate court, in approving his final account, had specifically ordered that he would not be discharged from his trust until the motion for surcharge was resolved. Despite these circumstances, Richard chose not to participate in the fee hearing. For these reasons, we reject Richard's arguments and overrule the fourth assignment of error.
In his fifth assignment of error, Richard asserts that the probate court erred in surcharging him for lost interest under R.C. 2109.42 based on his failure to properly invest estate assets. We disagree.
R.C. 2109.42 provides for the imposition of liability upon a fiduciary who fails to invest or deposit assets that are not required for the payment of current obligations or for distribution. Richard contends that his obligation to invest estate assets never arose because the terms of what he believed to be a valid will required him to distribute the estate assets to the named beneficiaries. Accordingly, he contends that liability under R.C. 2109.42 could not have attached to him.
Assuming arguendo that it was inappropriate to surcharge Richard under R.C. 2109.42, we nevertheless conclude that the probate court, under its plenary powers, was vested with the authority to surcharge Richard for losses sustained by the estate's rightful heirs due to his fraudulent actions and misadministration of the estate, both of which constituted breaches of his fiduciary duties.[11] Accordingly, we overrule the fifth assignment of error.
In his sixth assignment of error, Richard asserts that the probate court erred in surcharging him for $1,134.68 in interest paid by the estate as a result of the delinquent filing of the Ohio Estate Tax Return. First, he argues that he should not be held liable for this interest payment because his delinquent filing was not unreasonable given the complications in the administration of the estate, including a fire that occurred in his home. We cannot agree that Richard's neglect was excusable. Richard did not file the return until October 25, 1994, over two years after his appointment and more than one year after the expiration of the time period prescribed by R.C. 5731.21(A)(1)(a). This late filing resulted in the assessment of $1,134.68 in interest, which was borne by the estate. In its entry of surcharge, the probate court specifically found that the entire estate administration should have been completed within one year, despite the occurrence of the fire. Given the probate court's superior knowledge of these matters, we defer to this determination.
Richard also argues that the late filing of the return and the resulting interest assessment were not attributable to him because it was not his duty, but the duty of the estate's counsel, to prepare the return for filing. Although it is certainly appropriate for a fiduciary such as an administrator to seek the assistance and advice of counsel competent in matters of probate, such consultation does not operate as a discharge of that fiduciary's duties. It was ultimately Richard's responsibility as administrator to timely file the return or to apply for an extension. He did neither. Furthermore, Richard's attempt to deflect responsibility to counsel for the estate is disingenuous given his failure to retain counsel until the return had already become delinquent. And the absence of counsel until that point in no way relieved him of his duties to the estate. Accordingly, we reject the sixth assignment of error.
In his seventh assignment of error, Richard asserts that the probate court erred in surcharging him for bond premiums, court costs, bank-services charges and wire-transfer fees, a Charles Schwab wire fee, and interest on a delinquently filed federal tax form, all of which the court determined were incurred by the estate only as a result of Richard's breach of fiduciary duties.
In this assignment, Richard essentially takes issue with the probate court's determination that, but for his breach of fiduciary duties, the estate would have been closed within one year and would not have incurred the expenses listed above. Again, he cites the fire in his home to justify the lengthy administration. Accordingly, he argues that these fees were not attributable to his breach of duties. Because we conclude that there is competent, credible evidence to support the trial court's determination that Richard, through his negligent and fraudulent behavior, was responsible for the estate's prolonged administration and for the resulting additional expenses, we will not disturb this determination.[12] Therefore, we overrule the seventh assignment of error.
Because Richard's final assignment of error simply repeats arguments presented in his previous assignments, we summarily overrule it.
 CONCLUSION
For the reasons detailed in this decision, we dismiss this appeal in part and otherwise affirm the judgment of the probate court.
Judgment accordingly.
 Doan, P.J., Gorman and Sundermann, JJ.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Under this will, the bulk of the decedent's estate passed in equal shares to Richard, his mother, Mary Kelsch, and his four siblings, Marilyn Kelsch, Charles Kelsch, Thomas Kelsch, and Joseph Kelsch.
[2] Mary Kelsch was not among those notified, as she died on November 22, 1995.
[3] According to the magistrate's decision, Thomas testified that Joseph furnished him with a copy of the letter.
[4] See State ex rel. Gabriel v. Youngstown (1996),75 Ohio St.3d 618, 665 N.E.2d 209, citing Ohio ContractCarriers Assn. v. Public Util. Comm. (1942), 140 Ohio St. 160,42 N.E.2d 758, syllabus.
[5] Although the order was made in a special proceeding, it did not affect a substantial right. See R.C. 2505.02.
[6] Although Richard never attempted to obtain a continuance of the hearing until the criminal investigation was concluded, case law demonstrates that a delay of a civil proceeding is not justified by an individual's concern that his interest in not incriminating himself might preclude him from testifying in his own defense in the civil case. In other words, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them * * *." State ex rel.Verhovec v. Mascio (1998), 81 Ohio St.3d 334, 337,691 N.E.2d 282, 284, quoting Baxter v. Palmigiano (1976),425 U.S. 308, 318, 96 S.Ct. 1551, 1558.
[7] Sorin v. Bd. of Educ. of Warrensville Heights SchoolDist. (1976), 46 Ohio St.2d 177, 347 N.E.2d 527; Vancev. Roedesheimer (1992), 64 Ohio St.3d 552,597 N.E.2d 153.
[8] See Quality Ready Mix, Inc. v. Mamone (1988),35 Ohio St.3d 224, 520 N.E.2d 193.
[9] The entry fixing extraordinary attorney fees was also introduced into evidence at the hearing on the motion for surcharge.
[10] See In re Knotts (1996), 109 Ohio App.3d 267,671 N.E.2d 1357.
[11] See Stevens v. National City Bank (1989),45 Ohio St.3d 276, 544 N.E.2d 612; Miller v. Proctor
(1870), 20 Ohio St. 442; In re Guardianship of Cawein
(Nov. 1, 1995), Hamilton App. No. C-940885, unreported; In reGuardianship of Zimmerman (1943), 141 Ohio St. 207,47 N.E.2d 782.
[12] C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.