Putnam, J.,
dissenting. I am not in favor of changing the Ohio rule of limited liability of charities for the torts of their employees. The present rule gives them immunity except as to strangers to the charity and where there has been negligence in the selection or retention of employees. See Cullen v. Schmit (1942), 139 Ohio St., 194, 39 N. E. (2d), 146.
The chief basis of the rule is that charities are masters different from others, and the rule of respondeat superior, which in itself is an exception to the more ancient rule that one is not *479 responsible for another’s wrongs, should not be extended to eleemosynary institutions. This court has stated that the rule of respondeat superior is primarily founded on public policy.
In the case of Waddell, a Minor, v. Young Women’s Christian Association, 133 Ohio St., 601, 603, 15 N. E. (2d), 140, it was stated by Gorman, J.:
“The well-settled rule in Ohio is that a hospital which is a charitable institution is not liable for injuries resulting from negligence of its servants unless it is shown that it failed to use due care in the selection or retention of the servants who caused the injury. Taylor, Admr., v. Protestant Hospital Assn., 85 Ohio St., 90, 96 N. E., 1089; Taylor v. Flower Deaconess Home and Hospital, 104 Ohio St., 61, 135 N. E., 287, 23 A. L. R., 900; Rudy v. Lakeside Hospital, 115 Ohio St., 539, 155 N. E., 126; Lakeside Hospital v. Kovar, Admr., 131 Ohio St., 333, 2 N. E. (2d), 857.
“While many different theories are.advanced for this limitation of liability, it is most generally held that it is against public policy to hold charitable institutions liable where the servants who caused injury were selected with care. Taylor v. Flower Deaconess Home and Hospital, supra, 66, 67.
“The rule pertains not only to hospitals, but is applicable in the case of all public charitable institutions. 2 Restatement of Law of Trusts, 234, Section 402; 10 American Jurisprudence, 692.”
This has been a principle of Ohio law since 1911. Although the instant case involves the liability of a charitable hospital, it can be seen from the above quotation that the same rule applies to all public charitable institutions. The defendant in its brief lists about one hundred charitable activities in Cleveland alone which participate financially in the Welfare Federation of Cleveland. There must be thousands of them in the state of Ohio. Included among them are the Boy Scouts, Girl Scouts, Salvation Army, Young Men’s Christian Association, Young Women’s Christian Association, various homes for the aged sponsored and kept up by various groups, various institutions for delinquent or dependent children, etc. All these are vitally affected by this decision. It cannot logically be circumscribed to be applicable to hospitals alone.
*480 The majority opinion, as shown by the extensive quotations therefrom, is chiefly grounded upon the opinion of Judge Rutledge in the case of President and Directors of Georgetown College v. Hughes, 130 F. (2d), 810, decided in 1942 by the United States Court of Appeals of the District of Columbia, consisting of six judges. The case was one of first impression in that court. It involved a review of a judgment against a charity for injury negligently inflicted by an employee on a stranger to the charity. The judgment was affirmed, but the court was not in agreement upon the grounds of the affirmance. Three of the judges agreed to affirm only because the plaintiff was a stranger to the charity. The other three, including Judge Rutledge, placed the affirmance on the broader ground that charities should not be immune as such. Consequently what is said therein upon this proposition is obiter and efficacious only so far as the arguments are persuasive. It might here be pointed out that under the Ohio rule the judgment would have likewise been affirmed.
In the past ten years or so, the courts of final review in at least 30 states have re-examined their stand on this immunity doctrine. In 20 of these states the immunity of charities, either whole or partial, has been reaffirmed, whereas in only ten states has the same been repudiated. Arguments similar to those of Judge Rutledge and contra on the immunity question occupy much space in the lawbooks and most of them are contained in the opinions in previous cases decided by this court. A further analysis here would not serve any useful purpose. I desire only t’o point out that the arguments of Judge Rutledge failed to convince three members of his own court and also the judges of the highest courts in 20 states. This would seem to cast grave doubts on the quoted statement from Prosser on Torts to the effect that the Rutledge opinion completely demolished all arguments against immunity. Although the opinions of legal scholars, not judges, may be of high value on purely legal questions, I do not think that the same are potent when it comes to making public policy for the state of Ohio.
Whether the immunity doctrine from a historical standpoint is not based solidly on the common law of England should not concern this court too much. Ohio has never slavishly fol *481 lowed the common law as do some states. As early as the case of Bloom v. Richards, 2 Ohio St., 387, this court said, inter alia:
“The English common law, so far as it is reasonable in itself, suitable to the conditions and business of our people, and consistent with the letter and spirit of our federal and state Constitutions and statutes, has been and is followed by our courts and may be said to constitute a part of the common law of Ohio. But wherever it has been found wanting in either of these requisites, our courts have not hesitated to modify it to suit our circumstances or if necessary wholly to depart from it. ’ ’
Public policy in Ohio should not be dictated or circumscribed by public policy elsewhere.
A fundamental question raised in the instant case is how far it is wise for this court to go in making public policy on this question. This court has already spoken in the case of Lakeside Hospital v. Kovar, Admr. (1936), 131 Ohio St., 333, 2 N. E. (2d), 857. In that case, the doctrine of nonliability of a charitable hospital was reaffirmed, and, at page 343, the following language appears:
“More than 14 years have passed since this court declared that a public charitable hospital is not liable unless it has failed to exercise due care in the selection of its nurses, etc. We may well suggest, as other courts have done, that our Legislature could, if it wished, change the law established by this court. It has not done so; it may not desire to do so. When the Supreme Court of Ehode Island held that hospitals were liable for negligence, the Legislature of that state devitalized their court’s decision by passing a law providing for nonliability of hospitals incorporated in that state.”
I see no reason for departing from that pronouncement. If there is to be a change in our policy and law, let the Legislature do it after full hearings in which the representatives of all communities and charities affected may be heard. If public policy demands it the Legislature can act as it did in enacting Section 4515.02, Eevised Code, limiting the liability of the driver ' host to his guest passenger.
. I feel that this decision burns down a good barn of solid construction and many compartments in order to eliminate a *482 few rats in one compartment, which may be destroyed by other methods less drastic and more wise.
Collier, J., concurs in the foregoing dissenting opinion.