Heebebt, J.
The paramount question here arises from the holding of the Court of Appeals that:
“It was incumbent upon the plaintiff [appellant] to produce evidence proving the standard of care required to be exer-
I *505 cised by tbe defendant [appellee] appropriate to the situation and surrounding circumstances shown to exist at the time and place of plaintiff’s injury and consequent damage.”
Essentially the facts are largely undisputed. It is appropriate, however, that they be reviewed briefly. The appellant was a young woman, aged 21 years, who, at the time of her injuries, was in the hospital to give birth to her first child. Her husband, aged 22, was in the labor room for some portion of the time prior to the injuries of his wife. Four rooms were designated by the hospital for patients in labor. Four nurses were assigned to these rooms. The facts indicate that at times only one nurse was present in the room of the appellant.
Appellant was drowsy, lethargic, delirious, and restless, and she made several attempts to get out of her bed. One of the nurses raised the guardrails of appellant’s bed up to the highest point of their elevation. Two of the four assigned nurses were engaged in the delivery room. The head nurse was observing the progress of another delivery, which left one nurse in the room of appellant. The appellant was experiencing a contraction about once every two minutes. The lone nurse went to another room and was busy, close to the door of appellant’s room, making notations upon the appellant’s chart. A physician, not connected with the appellant in any way, appeared and requested that this nurse accompany him to visit another patient in labor. There was a rule of the hospital that no physician could attend a woman in labor except in the presence of a nurse.
The nurse had observed appellant trying to get out of her bed and attempting to put one limb over the guardrail. The nurse testified that, with restless patients, “we * # * watch them a little more closely.” Appellant’s husband was concerned and cautioned the nurse, as she related in her testimony: “ * * * and also I remember his saying that we had better watch her or she’ll fall out of the bed.”
During this absence of the nurse, appellant fell out of her bed.
Appellant’s chart, as noted by the nurse, read:
“2:40 p. m. Pt. restless — trying to get up to bathroom.
“2:45 p. m. Pt. has apparently crawled over side rail *506 at head of bed and fallen on floor striking left side of face and inner spect of It. arm and rt. lateral thigh. Small deep cut over It. cheek bone and contused It, eye.”
Appellant was unattended for a period of from one to five minutes. There was substantial evidence for the consideration by a jury upon the question of negligence of the nurse.
The doctrine of respondeat superior is applicable to hospitals in Ohio. See paragraph one of the syllabus of Avellone v. St. John’s Hospital, 165 Ohio St., 467, which reads:
“A corporation not for profit, which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of respondeat superior, liable for the torts of its servants. (Taylor, Admr., v. Protestant Hospital Assn., 85 Ohio St., 90, Rudy v. Lakeside Hospital, 115 Ohio St., 539, and paragraphs one and two of the syllabus of Lakeside Hospital v. Kovar, Admr., 131 Ohio St., 333, overruled.)”
In order to establish the standard of care exercised by hospitals in this community in the labor rooms of their obstetrical departments, it would be necessary to resort to expert opinion. But is resort to expert-opinion evidence necessary in this cause? Is proof of the standard of care maintained in other hospitals required? We think not.
21 Ohio Jurisprudence (2d), 450, Section 436, discusses expert-opinion evidence, as follows:
“Broadly speaking, expert opinion evidence is admissible only where the inquiry involves a question of science or art, or of professional or mechanical skill, and is incompetent where the matter of inquiry is within the common knowledge of average general information. * * *
“So many matters of common observation are subjects upon which witnesses may give the benefit of their observation without previous preliminary expert qualification that it is hardly practical or necessary to enumerate them. * * *
“ * * * To sum up: In everything pertaining to the ordinary and common knowledge of mankind jurors are supposed to be competent, and peculiarly qualified to determine the connection between the cause and effect established by common experience, and to draw the proper conclusions from the facts before *507 them; and if the matter can be decided from ordinary experience and knowledge, the jury are allowed to decide it unaided * * * J?
It seems quite clear that the average juror from his own personal knowledge would be able to conclude that an expectant mother, delirious, drugged, restless and determined to climb out of her bed, would in all probability succeed unless she was closely supervised. Surely no testimony is necessary to establish cause and effect under the circumstances presented by tb« undisputed evidence in this case.
The court may take judicial notice that juries of today include women. Many of these woman jurors are mothers and, in. many instances, grandmothers. In the case at bar, there were six women. They know probably as much if not more about childbirth than many experts who might be put on the witness stand.
The jury, unaided by the opinion of experts, was sufficiently equipped with knowledge gained from everyday life to consider the facts and to return a verdict supported by competent evidence of proof of negligence proximately causing appellant’s injuries.
It having been determined that the nurse was negligent, and that, as a proximate result of her negligence, the appellant was injured, it follows that, under the doctrine of respondeat superior, the hospital must respond in damages as determined by the judgment of the trial court in the first instance.
It may be contended that the conduct of the nurse or nurses was in a professional capacity, and that they, therefore, were independent contractors and not subject to the doctrine of respondeat superior.
Klema, Admx., v. St. Elisabeth’s Hospital of Youngstown, 170 Ohio St., 519, in the second paragraph of the syllabus, disposes of that question:
“A corporation not for profit, which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of respondeat superior, liable for the negligent acts of its employees, irrespective of whether those acts are administrative or medical.”
*508 Therefore, the judgment of the Court of Appeals is reversed, and those of the Court of Common Pleas and of the Municipal Court are affirmed.

Judgment reversed.

Zimmerman, acting C. J., Matthias, O’Neill, Griffith and Gibson, J J., concur.
Zimmerman, J., sitting in the place and stead of Taft, C. J.
Duffey, J., of the Tenth Appellate District, sitting by designation in the place and stead of Zimmerman, J.*