### HOWISON, ESTATE OF, In Re

Ohio Appeals, 3rd Dist, Union Co

No 156.  Decided June 27, 1934

Sigler & Denlinger, Dayton, and Cameron & Cameron, Marysville, for plaintiff in error.

C. A. Hoopes, Marysville, for defendant in error.

## OPINION

By GUERNSEY, J.

As hereinbefore stated, the exceptions filed by The American Surety Company was based on the fact that the executor did not

attach to the account an itemized statement of the assets in his hands consisting of a checking account and certificates of deposit in The Farmers Deposit Bank. The failure of the executor to attach such itemized statement was not in any way prejudicial to the Surety Company for, as shown by the evidence, all of the information that would have been shown in such statement, was and is available to it from the testimony of Benton Cahill as well as from other sources, and the filing of such an itemized statement would not of itself have had the effect of in any way reducing the amount for which the executor and his surety were held liable on the executor's accounting of said estate, so that if the exceptions filed are treated as being limited to their terms, they would necessarily have to be overruled.

However, such exceptions were treated by the parties, in the trial of this case, as exceptions to the failure of Cahill as executor to claim credits in his account for losses sustained by him on the deposits of funds belonging to the estate in The Farmers Deposit Bank through the failure of such bank, and will therefore be treated and considered in the same manner in this error proceeding.

The losses on deposits through the failure of said bank for which the Surety Company claimed Cahill was entitled to claim and receive credit, are divided into five classes, to-wit:

1. Losses on deposits of proceeds of Liberty bonds, the sales being unauthorized, and the deposits made on interest bearing time certificates of deposit.

2. Losses on deposits of other funds of the estate derived from the sale and collection of assets on interest bearing time certificates of deposit.

3. Losses on deposits of funds of estate on interest bearing time certificates of deposit issued in name of executor in place of certificates of deposit issued to his testator for deposits made in her lifetime.

4. Loss on deposit represented by interest bearing time certificates of deposit issued to testator which became due approximately six months before failure of bank, and which remained in same form as originally issued, until closing of the bank.

5. Loss on deposit of funds of estate in checking account and on non-interest bearing demand certificate of deposit.

The question to be determined, therefore, is whether under the facts in this case the executor, Benton Cahill, was entitled to claim and receive on his final account, credit for the said losses on deposits of funds of the estate in The Farmers Deposit Bank, sustained through the failure of said bank.

The liabilities of executors and administrators are those that grow out of and are necessarily attached to the fiduciary relation they have assumed. Good faith and the care that any prudent man would exercise in the management of his own affairs are essential to the just performance of their duties. They cannot be excused for neglect of what is plainly for the interest of the trust confided to them. The question is, has the executor acted in the discharge of his duties as he ought to have done in the management of his own business? **Ramsey, Admr., etc. v James McGregor et, Admrs., Etc., 13 Ohio Decisions Reprint, page 578.**

Executors and administrators must employ such diligence as prudent men of discretion and intelligence generally employ in their own like affairs. In Re Krueger's Estate, 252 N. Y. S. 688.

When the correctness of a credit taken by an administrator in his account, is challenged, the burden of establishing the validity of such credit is upon the administrator. Fourth Subdivision, syllabus, **Steward et v Berry, Admr., 102 Oh St 129. 18 Ohio Jurisprudence, page 311.**

An executor or administrator is presumptively chargeable with the appraised value of the items appearing in the inventory and appraisement of his decedent's estate, but is entitled to claim credits on such charges where the amounts realized from such items are less than the appraised value thereof, and for losses incurred in the administration of the assets represented by such items, provided such losses are not sustained through his failure to exercise proper care. If he fails to claim credit for losses sustained by him, he is chargeable with the full amount of said assets. On the other hand, if he claims credit for losses, the burden of establishing the validity of such credits is upon him.

Applying these rules to the facts in the case at bar, it appears that the executor is entitled to credit for the losses on deposits of the funds of the trust sustained through the failure of the bank in which such deposits are made, only if he exercises the good faith and the care in making such deposits, as men of ordinary prudence would exercise in the management of their own affairs, and the burden is upon him to establish that he exercised such good faith and care.

As stated above, the facts in this case show that the bank was in a precarious condition from the time of the appointment of the executor until its closing, and that after the sale of the Liberty bonds and the deposit of the funds arising therefrom, in the bank, it at no time had cash sufficient to pay off the amounts deposited by the executor with it.

It further appears as a reasonable inference from the testimony, that the Liberty Bonds were sold and the proceeds deposited in the bank for the purpose of bolstering up the credit of the bank without regard to the safety of the funds deposited by the executor. The evidence instead of establishing that the executor exercised good faith and the care that men of ordinary prudence would exercise in the management of their own affairs, in the making of such deposits, shows that the executor failed to exercise such good faith and care, and consequently is not entitled to credit for the losses sustained by him through the failure of such bank.

Furthermore, the sale of said Liberty Bonds by the executor without authority or order from the court, amounted in law to a conversion of such bonds for which the executor was liable, irrespective of the care or lack of care he used in depositing the proceeds thereof.

The deposits of the proceeds of these bonds, as well as the deposits of the proceeds of the other assets of the estate, on interest bearing time certificates of deposit, constituted investments and not ordinary deposits of funds. Such investments were unauthorized and the executor is chargeable with the full amount thereof irrespective of whether such deposits were made in good faith or bad faith and with care or lack of care.

The certificate of deposit for $5000 issued by the bank to the decedent prior to her death, and permitted by the executor to continue in her name in the same form after his appointment until the failure of the bank, and the certificate of deposit for $13,500 issued in the name of the executor representing certificates in that aggregate amount standing in the name of the testator at the time of her death, stand in no better position insofar as the right of the executor to claim credit for the losses on same, is concerned, than any of the other deposits, as the executor had the same title to these deposits as he had to the other funds of the estate and owed the same duty toward them as he owed in regard to the other funds of the estate. As the executor had personal knowledge of the un-

safe condition of the bank, it was his duty to withdraw the amounts of these certificates from the bank and deposit them in a safe bank, and his failure to do so was negligence for which he and his surety are liable.

The checking account and the deposit in non-interest bearing demand certificate of deposit maintained by the executor in the bank stand on the same basis as the other deposits insofar as the executor's right to claim credit for losses on account of the failure of the bank. And as he did not exercise good faith and proper care in depositing these funds in the bank and permitting them to remain there, he is chargeable with the full amount of such deposits.

The tender by Cahill to McAllister, administrator, of the certificates of deposit and the assignment of the bank account did not alter the rights of the parties, as the administrator was not required to accept said certificates and account at their face value as conditioned in the tender, but had the right to demand and receive them as assets of the estate and to apply the amount that may be realized from them, on the amount found due from said executor on the settlement of his account.

As the executor resigned, it was the duty of the Probate Court to settle his accounts as of the time of the resignation, and the Probate Court was not required to, and could not wait until the complete liquidation of the bank and the application of the funds derived from such liquidation to the amount chargeable against the executor to fix and determine and order paid, the amount due from the executor on such accounting, and consequently the order made by the Probate Court finding the amount due on such accounting from the executor and ordering it paid forthwith, was properly made by said court.

Furthermore, after the filing and approval of the final account, the beneficiaries of the estate of the testator were entitled to receive payment of the various amounts owing them by the estate, and funds for this purpose would have been then available except for the negligence of the executor in depositing the funds of the estate as aforesaid, and it would be unjust and inequitable to punish them for the negligence of the executor by requiring them to wait for the amounts due them, until the slow process of liquidation of the bank had been completed and the deficiency then ascertained and recovery had from the executor and his surety for such deficiency. The executor, upon the payment of the

amount found due from him to the estate on an accounting, is entitled to be subrogated to the claim of the estate against the bank on account of such deposits and to the benefit of any dividends that may be paid thereon, and consequently neither he nor his surety is prejudiced by being required to pay the amount found due from him on his accounting prior to the liquidation of the bank.

As the account of the executor showed the amount due to the estate from him and the executor was not entitled to any credit for losses sustained by him in the manner above set forth, the order of the Probate Court finding the amount due and ordering the same paid, and the judgment of the Common Pleas Court overruling such exceptions, were not erroneous.

Plaintiff in error relies on the case of In re Krueger's Estate, 252 N. Y. S. 688, as authority for the proposition that a final judicial settlement of the account of the executor could not be made for the reason that the obligation of the bank to its depositors are now only in process of liquidation since it is probable that additional dividends or payments will be made from time to time in the future on account thereof, and that final settlement must be deferred until a complete liquidation of the affairs of the depositor has been accomplished.

The Kruger case differs from the case at bar in the following particulars: First, the court in that case found on the facts and law that the administrator was guilty of no negligence or improper action whatsoever in making the deposit of the estate funds and that consequently he is not liable to surcharge under the present proceedings by reason thereof, while in the case at bar the administrator was guilty of negligence and improper action in making the deposits of the estate funds and is not entitled to credit for losses sustained by reason thereof. Second, in the Kruger case the administrator did not resign but continued to act, and as the administrator was not liable for prospective losses the court properly found that a final judicial settlement of the account of the administrator could not be made until the liquidation of the bank was completed, while in the case at bar the executor resigned and his resignation made a final judicial settlement of his account necessary and the executor is liable for the losses sustained.

Holding the views hereinbefore expressed, the judgment overruling the exceptions to the first and final account of the executor is affirmed.

CROW, PJ, and KLINGER, J, concur.