Jones, J.
 

 There is ample testimony in the record to support the answer of the defendant below that Lakeside Hospital is a public, charitable hospital and not organized for profit, etc. Counsel for the hospital substantially admit that the act of one of its nurses was one of negligence which proximately caused the death of the patient; but in support of their claim of nonliability they rely upon the pronouncement of this court that, even so, the hospital is not liable unless the plaintiff has proven that the hospital authorities were negligent in the selection or retention of its nurses.
 
 *337
 
 They rest their argument on the decisions of this court in
 
 Taylor, Admr.,
 
 v.
 
 Protestant Hospital Assn.,
 
 85 Ohio St., 90, 96 N. E., 1089, 39 L. R. A. (N. S.), 427;
 
 Taylor
 
 v.
 
 Flower Deaconness Home & Hospital,
 
 104 Ohio St., 61, 135 N. E., 287, 23 A. L. R., 900, and
 
 Rudy
 
 v.
 
 Lakeside Hospital,
 
 115 Ohio St., 539, 155 N. E., 126. Judge James 0. Johnson wrote the opinions in both of the
 
 Taylor cases.
 
 The syllabus in the second
 
 Taylor case
 
 is as follows:
 

 “Where a public charitable hospital has failed to exercise due and reasonable care in the selection of physicians, nurses or attendants, and injury results from the incompetence or negligence of such persons, the hospital is liable.
 
 (Taylor, Admr.,
 
 v.
 
 Protestant Hospital Assn.,
 
 85 Ohio St., 90, distinguished.)”
 

 In announcing this rule of nonliability, we follow the weight of authority. As stated by Judge Johnson in his opinion: “* * * the most generally accepted theory is that it is against public policy to hold the charity liable for negligence of servants where they have been selected with care.”
 

 This court has recognized that there is a conflict of opinion among the courts of the various states as to the liability or nonliability of hospitals organized for public charity and not for profit. In the
 
 Rudy case, supra,
 
 we said in the
 
 per curiam
 
 opinion: “There is a wide divergence of opinion in the various jurisdictions of this country regarding the liability of charitable institutions whose funds are provided by benevolences. 11 Corpus Juris, pp. 374-377. This court has held that a public charitable hospital is not liable for injuries to a patient resulting from the negligence of one of its employes.
 
 Taylor, Admr.,
 
 v.
 
 Protestant Hospital Assn.,
 
 85 Ohio St., 90, 96 N. E., 1089, 39 L. R. A. (N. S.), 427. The only exception to the foregoing principle made by this court is that such charitable hospital is required to use reasonable care in the selection of its physicians, nurses, or attendants, in order
 
 *338
 
 to avoid liability for their negligence.
 
 Taylor
 
 v.
 
 Flower Deaconness Home and Hospital,
 
 104 Ohio St., 61, 135 N. E., 287, 23 A. L. R., 900.”
 

 The underlying reason generally assigned by courts denying liability is that the hospital property and funds are derived from gifts, devises or other benefices, and should not be diverted to the payment of tortious claims, thereby depleting endowments supplied by charitable donors.
 

 In the first trial of the case the judge charged that the burden of proof of exercising due care in the selection of nurses was upon the hospital. The Court of Appeals reversed the trial court for error in so placing the burden of proof. This alleged error was cured on the second trial by the trial judge placing the burden upon that issue upon the plaintiff. This feature after all presents the crux in this controversy. Counsel for plaintiff below argue, in substance, that the Court of Appeals on the first hearing committed error; and that this court should now declare that the burden of showing due care in the selection of its nurses rests upon the hospital authorities.
 

 The case chiefly relied upon in support of his contention is
 
 Lewis
 
 v.
 
 Young Men’s Christian Assn.,
 
 206 Cal., 115, 273 P., 580, decided by three members of the Supreme Court of California. However, that case seems to be in conflict with the case of
 
 Burdell
 
 v.
 
 St. Luke’s Hospital,
 
 37 Cal. App., 310, 173 P., 1008, decided by three judges of an appellate court, rehearing afterward denied by the Supreme Court. In the latter case, “no evidence was offered to show that defendant was negligent in employing incompetent or careless nurses, or in omitting to use due care in the selection of its staff.” A judgment was directed in favor of the defendant hospital.
 

 In the Kansas case,
 
 Nicholson
 
 v.
 
 Atchison, Topeka & Santa Fe Hospital Assn.,
 
 97 Kan., 480, 155 P., 920, plaintiff had filed a petition which did “not state that
 
 *339
 
 the hospital association failed to use reasonable care in this respect.” The Supreme Court of Kansas held in the third proposition of the syllabus that “In such an action a petition which fails to allege that the defendant did not exercise reasonable care in the selection of its physicians and attendants is subject to demurrer. ’ ’
 

 Other cases supporting similar views are
 
 Weston’s Admx.
 
 v.
 
 Hospital of St. Vincent of St. Paul,
 
 131 Va., 587, 611, 107 S. E., 785;
 
 Wallwork
 
 v.
 
 City of Nashville,
 
 147 Tenn., 681, 698, 251 S. W., 775.
 

 In
 
 Mikota, Admr.,
 
 v.
 
 Sisters of Mercy & Mercy Hospital,
 
 183 Iowa, 1378, 168 N. W., 219, decided by the Supreme Court of Iowa, the following appears in the opinion: “If the case rested on the negligence of the defendant in the selection of incompetent servants, then it should appear affirmatively that the injury is traceable to such negligence. Even an incompetent servant may be negligent, and if the injury is traceable to such negligence and not to the incompetency, then there is no liability, under the rule hereinbefore stated.” The latter case was decided upon a demurrer of the hospital to the petition. The demurrer was sustained and the petition dismissed. The Supreme Court of Iowa affirmed the trial court, using the following language in its opinion:
 

 “A careful examination of the petition discloses that in no place does it affirmatively appear that the injury complained of was caused or contributed to by any negligent act of the defendant in the selection of servants. There is no allegation that the defendant did not use reasonable care in the selection of its servants, or that the injury was due to negligence in the selection of servants, as differentiated from the negligence of the servants selected. *
 
 * *
 
 If the case rested on the negligence of the defendant in the selection of incompetent servants, then it should ap
 
 *340
 
 pear affirmatively that the injury is traceable to such negligence. ’ ’
 

 There is one fundamental, general rule of procedure which all lawyers recognize, and that is that in order to recover a plaintiff must prove the essential allegations contained in his petition. But plaintiff below contends there is an exception to this rule, which is that when it is shown that certain facts are peculiarly within the defendant’s knowledge, the burden of proof falls upon him to disclose them. But this record does not disclose that the defendant had knowledge of any facts affecting the nurses ’ incompetency until after the operation and the injection of the boric acid. The burden of proof of showing lack of care in the selection of the nurses rested upon the plaintiff, and the trial court so charged.
 

 While this rule is not directly declared in
 
 Taylor
 
 v.
 
 Flower Deaconess Home and Hospital, supra,
 
 the course of the trial and its resultant judgment in this court indicate approval of the charge in the
 
 Taylor case.
 
 The petition had alleged that the direct and proximate cause of the injury was the negligence and carelessness of the hospital in selecting an incompetent and unskillful servant. The trial court had charged that, “In addition to proving that the defendant was negligent in this matter that he charges, in the selection and keeping of this servant and the proof of her incompetency and carelessness, which the plaintiff must prove,” etc. Were the petition to omit the allegation that the hospital authorities failed to exercise due care in the selection of its nurses, it would have failed to state a cause of action by reason of the omission of one of the necessary elements required to be proven under the second
 
 Taylor case, supra.
 
 The cases heretofore cited sustain that principle.
 

 There is ample proof in this record that the nurses in charge of the patient were graduate nurses, with long training and experience; the plaintiff furnished
 
 *341
 
 no evidence controverting those facts. There is nothing substantially supporting the fact that, prior to this accident, nurses in attendance upon the patient had been negligent or derelict in their duties or that the hospital authorities had not exercised due care in their selection. Certainly the hospital authorities should not be charged with lack of due care in this respect where the incompetency of a nurse appeared for the first time after the operation.
 

 The patient’s death occurred August 21,1930. Four days later Dr. Wilcox, the interne in charge, made an investigation of the accident and filed his report in the hospital records. This report sets out his, Dr. Wilcox’s, connection with the operation and subsequent treatment of the patient. In the course of his written report Dr. Wilcox stated that some nurse had questioned him as to the amount of novocaine to bo used; and in the course of the conversation Dr. Wilcox said he believed that the nurse stated that “it was her first time in the hospital and that she was, consequently, quite unfamiliar with the routine.” More than a month later, to be exact on September 26, 1930, one Mr. Thomas, attorney representing the deceased’s husband, called on one Mr. Chapman, who is described as being Director in Charge of Lakeside Hospital, for the purpose of ascertaining how the accident occurred. Mr. Thomas testified that Mr. Chapman said he would look at the records on file; that they contained the history of how it occurred. He handed Thomas a file of papers containing Dr. Wilcox’s statement. As the files were handed to Thomas, the latter testified that Mr. Chapman said: “This is how it happened.” This testimony was admitted by the trial court, over the objection of the defendant, evidently upon the theory that it was a declaration against interest.
 

 It is obvious that the statement of Mr. Chapman to Mr. Thomas was purely hearsay. Not only was it not a part of the
 
 res gestae,
 
 but it was a narration of
 
 *342
 
 events that occurred more than a month before. Moreover, it was not a report of investigation made by Chapman himself, but of one made by an interne of the hospital who could not, under any circumstances, bind the hospital authorities by an admission against interest. The admission of the evidence of Thomas was in effect the history of an occurrence that he had learned from Chapman, who had learned it from reports made by Wilcox, who claimed to have learned it from an investigation which he had made. Chapman’s knowledge, whatever he had, was based upon hearsay, and Thomas’ testimony was founded upon hearsay based upon hearsay. In the meantime, Mr. Chapman had died, and there was no opportunity for cross-examination. The testimony admitted was highly prejudicial. The Court of Appeals committed no error in holding Thomas ’ testimony inadmissible.
 

 It is inconceivable'why the Court of Appeals, instead of remanding the case, did not render final judgment in favor of the hospital. The Court of Appeals, having, found Mr. Thomas’ evidence incompetent, in the course of its opinion said that, with the removal of Dr. Wilcox’s statement from the jury’s consideration, “there remains no evidence against the hospital and the motion for a directed verdict as made by plaintiff in error at the close of all the evidence should have been sustained and the jury should have been instructed to return a verdict in favor of the defendant hospital.” And the Court of Appeals closes its opinion with the remark that, without the statement of Dr. Wilcox, “there is no evidence on the matter of the hospital’s failure to exercise due care in employing and retaining in its employment the nurse or nurses whose negligence caused Mrs. Kovar’s death.”
 

 After the appellate court’s judgment of remand, the hospital again asked for final judgment in its favor, based on that court’s assertion in its opinion that there was no evidence of failure to exercise due care in em
 
 *343
 
 ploying and retaining the nurses who caused the patient’s death. The motion for final judgment was denied by the appellate court, assigning as a reason therefor that since the evidence at the first and second trials was practically the same and had been once reviewed by a former Court of Appeals, it would not render final judgment in favor of the hospital. It regarded the first submission as having fixed the law of the case upon the second submission. Such a rule of procedure might apply where complete findings of fact are made, thus presenting a question of law; that is conceivable; but since the court, on second review, has equal authority to exercise its independent judgment over controverted facts, and since that court did not have before it the evidence given at the first trial, “the law of the case” cannot apply. The present case is particularly in point. In their brief in the instant case, counsel. for the hospital assert that nine witnesses testified on the first trial, while seventeen testified on the second.
 

 More than fourteen years have passed since this court declared that a public charitable hospital is not liable unless it has failed to exercise due care in the selection of its nurses, etc. We may well suggest, as other courts have done, that our legislature could, if it wished, change the law established by this court. It has not done so; it may not desire to do so. When the Supreme Court of Rhode Island held that hospitals were liable for negligence, the legislature of that state devitalized their court’s decision by passing a law providing for nonliability of hospitals incorporated in that state. See
 
 Magnuson
 
 v.
 
 Swedish Hospital,
 
 99 Wash., 399, 169 P., 828.
 

 The Court of Appeals did not err in finding the testimony of Thomas to be incompetent. Under the statement of facts contained in its opinion, which is borne out by the record, and its conclusions of law upon such facts, the appellate court should have rendered
 
 *344
 
 final judgment in favor of the defendant in error on authority of
 
 Majoros
 
 v.
 
 Cleveland Inter urban Rd. Co.,
 
 127 Ohio St., 255, 187 N. E., 857, and
 
 Greyhound Lines, Inc.,
 
 v.
 
 Martin,
 
 127 Ohio St., 499, 189 N. E., 244. The judgment of the Court of Appeals in refusing to render final judgment as indicated will be reversed, and, proceeding to render the judgment which the Court of Appeals should have rendered, final judgment will be entered in favor of the defendant in error, the Lakeside Hospital.
 

 Judgment reversed in part and affirmed in part.
 

 Weygandt, C. J., Stephenson, Matthias and Zimmerman, JJ., concur.