**In re TESTAMENTARY TRUST of HAMM, Deceased.**

[Cite as *In re Testamentary Trust of Hamm* (1997), 124 Ohio App.3d 683.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 96–G–2022.

Decided Dec. 1, 1997.

*Patricia J. Schraff, pro se.*
*Jerome W. Cook,* for appellant.

NADER, Judge.

This is an appeal from an order of the Geauga County Court of Common Pleas, Probate Division, entering judgment in favor of appellee, Patricia Schraff, successor trustee of the testamentary trust of Winona D. Hamm, deceased.

Winona Hamm died testate in 1973. Hamm's will established a testamentary trust for the benefit of her daughter, Betty W. Harrison, providing that the annual income from the trust be distributed to Ms. Harrison during her lifetime.[1] Upon Ms. Harrison's death, the trust was to be continued in favor of her seven

---

1. The will also gave the trustee the option of invading the trust corpus for several specifically stated purposes that are not relevant to this appeal.

children, including Christopher, Ms. Harrison's "handicapped child." The will appointed Mark Sperry trustee.

Sometime between 1973 and 1986, Ms. Harrison died, leaving seven living children. In 1986, six of the seven children mutually agreed to remove Sperry as trustee; Christopher Harrison was unable to participate in this agreement by virtue of his "handicap." The probate court approved the beneficiaries' request to remove Sperry as trustee, to distribute the trust corpus equally among the seven beneficiaries leaving Christopher's one-seventh share in the trust, and to appoint Robert M. Harrison, one of Betty Harrison's seven children and Christopher's brother, successor trustee of the Winona D. Hamm testamentary trust for the benefit of Christopher. Robert Harrison obtained a bond in the amount of $130,000 from appellant, Western Surety Company ("Western Surety"), to secure the "[f]aithful[ ] and honest[ ] discharge of the duties devolving upon [him] as * * * fiduciary."

Sperry filed a final accounting, which was approved by the probate court on November 19, 1986. This final accounting showed the balance of the trust for the benefit of Christopher to be $65,065.91, consisting of the following property:

| | |
|---|---|
| Cash | $26,065.91 |
| 180 shares Pennzoil stock | 9,000.00 |
| 180 shares Battle Mountain Gold stock | 0.00 |
| New England T & T bond | 10,000.00 |
| Ohio Bell bond (2 $5,000 bonds) | 10,000.00 |
| Detroit Edison bond | 5,000.00 |
| Ohio Edison bond | 5,000.00 |

Mr. Harrison (Robert) did not file a fiduciary's accounting between 1986 and 1993. As a result, the probate court issued a Citation to File Account on June 18, 1993. On August 17, 1993, Mr. Harrison filed with the probate court a handwritten document purporting to be his account for trust income and expenditures from 1986 to 1993. The court did not approve of the document as an account because it did not comply with the relevant requirements. Specifically, it did not contain a beginning balance and ending balance, nor was it supported by documentation, such as receipts. Mr. Harrison again attempted to comply with the court's order by filing a computerized worksheet prepared by an accountant in Atlanta, Georgia.[2] The court set the matter for hearing to be held on September 15, 1994.[3] Mr. Harrison did not appear, nor did he send a representative. Due to his failure to appear, the probate court issued a bench warrant for his arrest on December 6, 1994.

---

2. Mr. Harrison, at all times pertinent to this appeal, had a job that required him to travel extensively throughout the United States.

3. Mr. Harrison was granted several continuances before this hearing was set.

On September 5, 1995, the probate court filed a judgment entry finding Mr. Harrison in default of filing a semi-annual account and ordering him to appear on October 10, 1995, "to show cause why he should not be held in contempt of court for failing to file an accounting * * *." Mr. Harrison apparently did not appear for this hearing and, on October 30, 1995, the court removed him as trustee for failure to file proper accountings, and appointed Patricia Schraff as successor trustee. The October 30, 1995 judgment entry also ordered Mr. Harrison to file a final accounting and turn over all trust assets to Schraff within thirty days.

On May 3, 1996, Schraff filed a "Motion to Surcharge," citing Mr. Harrison's failure to comply with his fiduciary obligations, to wit: failing to file proper accountings. The motion requested the probate court to surcharge Mr. Harrison in the amount of $153,266.61, and Western Surety in the amount of $130,000, the full amount of the bond. Apparently, Mr. Harrison failed to turn over any trust assets at that time. The matter was set for hearing to be held on October 1, 1996. Mr. Harrison filed a motion for continuance on September 17, 1996, stating he had just obtained an attorney and they needed more time to marshal the assets, review trust income and expenditures, and otherwise prepare for the hearing. The court denied Mr. Harrison's request, citing the outstanding bench warrant for his arrest and his general failure to comply with many prior orders of the court.

At the hearing, no testimony was presented; the parties' attorneys merely made arguments, stipulated to various acceptable expenditures made by Mr. Harrison, and presented documentary evidence of the beginning balance of the trust in 1986 and the balance of the trust at the time of the hearing. Mr. Harrison did not appear. As a result, none of the additional evidence his attorney proffered was admitted because of a lack of authentication. After the hearing, Mr. Harrison filed a "Motion for Augmentation of the Record with Additional Exhibits," attaching various statements and receipts detailing some of his investments over the years. The trial court did not rule on this motion.[4]

The probate court filed its judgment entry on October 9, 1996, wherein the court found Mr. Harrison failed to file "a just and true account of his administration of the trust of Winona D. Hamm." The judgment entry also made findings regarding the trust's beginning balance ($65,065.91), stipulated expenses ($1,475.00) and the trust's balance as of the date of the hearing ($19,783.76). The "ending" balance consisted of the following assets:

---

4. Generally, when a lower court fails to rule on a motion, we presume the court overruled it. *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 169, 561 N.E.2d 1001, 1004.

| | |
|---|---|
| Kemper Funds Accounts (2) | $9,772.26 |
| 180 shares Battle Mountain Gold stock | 1,372.50 |
| 600 shares Sanctuary Woods stock | 264.00 |
| 1000 shares Datawatch Corp. stock | 8,375.00 |
| 600 shares U.S. Wood, Inc. stock | 0.00 |
| 500 shares U.S. Wood Products stock | 0.00 |
| 3,400 shares Alliance Fuel Corp. stock | ? |
| 1,000 shares Vyrex Corp. stock | ? |

The court subtracted the stipulated expenses ($1,475.00) from the beginning balance ($65,065.91) and arrived at $63,590.91, upon which it imposed ten percent interest, compounded annually from August 28, 1986, to October 8, 1996, the date of the judgment entry. The court calculated this figure to be $164,938.44, from which it subtracted the trust's ending balance ($19,783.76), surcharging Mr. Harrison $145,154.68. The probate court limited Western Surety's liability to the amount of the bond ($130,000). Western Surety appealed,[5] asserting the following as error:

"1. The Trial Court committed reversible error in *sua sponte* awarding any prejudgment interest where no motion for prejudgment interest was ever filed postjudgment, the statutory predicates for prejudgment interest were never supported, and where no other statutory or common law predicate for such interest was alleged, proven or the subject of any trial court finding of fact or conclusion of law.

"2. The Trial Court abused its discretion and acted against the manifest weight of the evidence in the calculation of the principal award of $63,590.91 (representing the full amount of the assets in the hands of the trustee in August, 1986, less $1,475.00 of approved expenses) and in its award of 10 percent compound interest accruing from the date of the fiduciary's first appointment (August, 1986), and imputing that interest upon the full amount of the principal award where:

"A) The supplemented hearing record showed that $30,000 worth of assets were properly on deposit and invested as recently as the period 1991–1993 so that a loss to the trust for these amounts could not possibly relate back to the initial appointment in 1986;

"B) The court failed to reduce the principal award by the value of assets turned over to the successor trustee ($19,783.76) before the imputation of interest;

"C) The court failed to reduce the principal award by $5,000 for expenditures to which the Trustee stipulated at the hearing;

---

5. Mr. Harrison also appealed the probate court's judgment. His appeal is the subject of a companion case, No. 96–G–2023. The issues in that case are the same as those at issue here and have been decided in an identical manner.

"D) There is no support for the imputation of compound, rather than simple interest."

Generally, Western Surety raises concerns regarding two issues: (1) the trial court's failure to make a finding that Mr. Harrison was negligent in managing the funds entrusted to him; and (2) the trial court's calculation of surcharge. In its appeal raising these two basic issues, Western Surety raises many objections to specific findings and calculations. For purposes of clarity and brevity, we will address the trial court's decision in this case generally, rather than attempt to address each specific calculation, as Western Surety urges.

We begin with the appropriate standard of review in cases of this ilk. The probate court's imposition of surcharge and its calculations regarding the correct amount due the trust will not be disturbed absent a showing of abuse of discretion. *Whitaker v. Estate of Whitaker* (1995), 105 Ohio App.3d 46, 55, 663 N.E.2d 681, 686–687. As is so often stated, an abuse of discretion connotes more than a mere error in judgment, but is present when the court's attitude in reaching a decision is arbitrary or unreasonable. *Id.*

R.C. Chapter 2109 supplies the requirements with which a fiduciary must comply in the administration of an estate, a guardianship, or a trust. On a ministerial level, a fiduciary is required to file with the probate court an accounting of income and expenses of the trust at least once every two years. R.C. 2109.30(A). If a fiduciary fails to file these periodic accountings, the probate court may issue a "citation" ordering him to do so. R.C. 2109.31(A). If the fiduciary does not file his accounting after the citation is issued, the Revised Code provides a list of specific remedies from which the probate court may select: (1) removal as fiduciary; (2) denial of fiduciaries' fees; (3) continuance of the matter; (4) imposition of a $125 penalty ($100 penalty plus $25 costs); or (5) issuance of various contempt orders. R.C. 2109.31(C).

On a more substantive level, a fiduciary "who has funds belonging to a trust which are not required for payment of current obligations of his trust or distribution shall, unless otherwise ordered by the probate court, invest such funds within a reasonable time according to section 2109.37 or 2109.371 of the Revised Code. On failure to do so, such fiduciary shall account to the trust for such loss of interest as is found by the court to be due to his negligence." R.C. 2109.42.

The duty of care required by R.C. 2109.42 has been described as follows:

"All * * * fiduciaries are held to a certain degree of care and prudence in the exercise of their duties and must always act honestly and in good faith. The degree of care and diligence required may vary under the terms of the trust and the circumstances of each case * * * and should be that which an ordinary man

would exercise in the transaction of his own business." *Morris v. Mull* (1924), 110 Ohio St. 623, 144 N.E. 436, paragraph one of the syllabus.

However, "[t]he action of the trustee is not to be judged on the basis of hindsight * * * otherwise there would be few, if any, who would undertake to act as trustees." (Internal quotation marks omitted.) *Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 282, 544 N.E.2d 612, 619.

Of course, a settlor or, in the case of a testamentary trust, a testator is free to alter or even eliminate some of the specific statutory duties (*e.g.,* duty to invest only in securities listed in R.C. 2109.37, 2109.371 and 2109.372) imposed upon the fiduciary in the terms of the trust or will. *Stevens,* 45 Ohio St.3d at 279, 282, 544 N.E.2d at 615–616, 618–619.

If the fiduciary does not comply with the mandates of R.C. 2109.42, he must "account to the trust for such loss of interest as is found by the court to be due to his negligence." Although not specifically mentioned in R.C. Chapter 2109, pursuant to the probate court's plenary power under R.C. 2101.24(C), a motion for surcharge has traditionally been the method employed to obtain relief from the mismanagement of trust funds under R.C. 2109.42 and the losses occasioned thereby. *In re Guardianship of Zimmerman* (1943), 141 Ohio St. 207, 25 O.O. 326, 47 N.E.2d 782, paragraphs two through four of the syllabus; *Miller v. Proctor* (1870), 20 Ohio St. 442, 447, 1870 WL 53.

From the foregoing statutory provisions and case holdings, two conclusions can be drawn. First, a motion for surcharge or other remedy designed to recoup losses from mismanaged trust funds is not the appropriate relief for a fiduciary's failure to file periodic accountings. Second, the imposition of a surcharge must be based on a finding of negligence in the administration (*i.e.,* investment) of trust funds.

In this case, Ms. Hamm's will granted broad powers to the trustee to sell, invest, and reinvest the assets of the trust. Specifically, Item II provides:

"I direct that * * * my said trustee * * * have full power to sell without any order of Court any of my property at such prices as he may deem best. I hereby authorize and empower my said trustee to invest and reinvest said funds *in securities approved by the State of Ohio.*" (Emphasis added.)

By this grant of power, Ms. Hamm specifically limited the power of the trustee to those investments permitted by statute and case law by utilizing the italicized phrase above. So, even though the trustee, Mr. Harrison, was given seemingly limitless powers over the trust fund, he was still required to invest only in securities authorized by the trust instrument or R.C. 2109.37 *et seq.* and was also

bound by the duty to invest the trust funds as would an ordinary person transacting his or her own business. *Morris* at paragraph one of the syllabus.

██ The judgment entry imposing a surcharge on Mr. Harrison and Western Surety contains no findings of negligence in Mr. Harrison's management of the trust funds. Rather the foundation for the award is the court's finding that Mr. Harrison failed to file "a just and true account of his administration of the trust of Winona D. Hamm." While Mr. Harrison breached his duty to file periodic accountings, the statute contains specific remedies for this failure, none of which is reimbursement of the lost trust funds. R.C. 2109.31(C).

Nor was any admissible evidence presented that Mr. Harrison's individual investments were contrary to his duty of due care. Although the parties seem to agree that Mr. Harrison's approach to his administration of this fund was somewhat haphazard, the statute permits recovery for any loss *due to his negligence.* R.C. 2109.42. There must be some evidence and some finding of negligence in his investments. *Id.* The trial court did not make such a finding. As such, the judgment entry ordering surcharge on the basis of Mr. Harrison's failure to file accountings is deficient on its face.[6]

██ Moreover, the trial court's calculations constitute an abuse of discretion. As stated previously, R.C. 2109.42 states and case law holds that the trust is entitled to recoup any loss it suffered as a result of negligent management by the trustee. This standard contemplates an inquiry into specific investments made or not made by the trustee to determine whether he acted as would an ordinary person with his or her own funds during that time period. *Morris, supra,* at paragraph one of the syllabus. A court may not merely calculate the difference between the beginning balance of the trust and the ending balance of the trust in the hands of the trustee and conclude the difference is the result of mismanagement of trust funds without any evidence in support of such finding, as done here. Rather, the court should receive evidence about specific investments made or not made to determine whether a particular investment was made negligently or illegally, calculating the damage to the trust from these individual investments.[7] Only upon this showing and finding may a court enter a judgment

---

6. We do not base our decision here on Western Surety's argument that the probate court's judgment entry failed to include specific findings of fact and conclusions of law under Civ.R. 52. Rather, we conclude the court's judgment entry did not comply with R.C. Chapter 2109's requirement that a surcharge be imposed upon a finding of negligent trust management.

7. If an investment is made illegally (*i.e.*, an investment not permitted by R.C. 2109.37, 2109.371, or 2109.372), the trustee is liable for loss occasioned thereby *regardless of the question of due care. In re Guardianship of Flavin* (1938), 59 Ohio App. 443, 449, 12 O.O. 262, 265, 18 N.E.2d 514, 516–517.

of surcharge against a trustee or his surety.[8] In this case, not only was there no evidence of negligence, but no evidence was presented that negligence caused any damage or loss to the trust *for the entire period* Mr. Harrison was its trustee.

 If the court had determined that Mr. Harrison negligently or illegally managed the trust funds entrusted to him (looking to particular investments made), the court would have been permitted to order him and/or Western Surety to, not only reimburse the trust for principle lost, but also order them to account for any "loss of interest" occasioned thereby. R.C. 2109.42. See, also, *Stevens,* 45 Ohio St.3d 276, 544 N.E.2d 612; *Zimmerman,* 141 Ohio St. 207, 47 N.E.2d 782; *Flavin,* 59 Ohio App. 443, 18 N.E.2d 514; *In re Estate of Howison* (1934), 49 Ohio App. 421, 3 O.O. 301, 197 N.E. 333; *In re Guardianship of Wammes* (Sept. 15, 1989), Lucas App. No. L–89–012, unreported, 1989 WL 106287. The trial court would have been permitted to set the amount of interest in its discretion. See *In re Trusteeship of Stone* (1941), 138 Ohio St. 293, 20 O.O. 369, 34 N.E.2d 755, paragraph seven of the syllabus, and at 306, 20 O.O. at 375, 34 N.E.2d at 761–762 (holding that it is within the discretion of the trial court to fix the rate of interest charged in these instances at the legal rate, at the usual rate of return on trust investments or at some other rate considered to be equitable and fair). Generally, however, the trustee is charged only with interest at the usual rate of return for trust investments and not the legal rate, absent a showing of willful misconduct or breach of the duty of loyalty. See *In re Estate of Shanafelt* (1955), 164 Ohio St. 258, 260, 58 O.O. 7, 8–9, 129 N.E.2d 816, 817–818. See, also, 3 Fratcher, Scott on Trusts (4 Ed.1988) 256–263, Section 207.1. Also, interest in these cases is simple, rather than compound, unless there is a showing of intentional misconduct or bad faith. See *In re Trusteeship of Conover* (1933), 26 Ohio Law Abs. 184, 192. See, also, Fratcher, *supra,* 265–266, Section 207.2.

---

8. Regarding appellee's contention that the burden is upon Mr. Harrison to validate his expenditures, we agree to the extent that, *once an exception is filed to a specific expenditure noted in the fiduciary's accounting,* Mr. Harrison must verify the validity of his expenditures to receive credit for those expenses. *In re Butler's Estate* (1940), 137 Ohio St. 96, 17 O.O. 432, 28 N.E.2d 186, paragraph three of the syllabus. Appellee cites *Whitaker,* 105 Ohio App.3d 46, 663 N.E.2d 681, in which, according to appellee, the Fourth Appellate District placed the burden upon the former trustee under circumstances similar to this case. The *Whitaker* court stated, "A fiduciary who exceeds his statutorily granted powers does so at his own risk." *Id.* at 53, 663 N.E.2d at 685. However, the court continued, stating, "* * * *[W]hen objections are taken to a [fiduciary's] account,* the burden of establishing the validity of the account is upon the [fiduciary]." (Emphasis added.) *Id.,* citing *In re Estate of Butler, supra.* Although a motion to surcharge was at issue in *Whitaker,* the motion was predicated on information contained in and objections filed to several fiduciary accountings, unlike here, where no acceptable accounting was filed. Thus, *Whitaker* is inapposite. *In a motion to surcharge,* the movant bears the initial burden to show some negligence in management of trust funds with regard to investments made, according to R.C. 2109.42.

Although Western Surety challenges the probate court's award of interest from the date of the trust's inception in 1986 as an invalid award of prejudgment interest, the court's award did not constitute an award of prejudgment interest. The Revised Code specifically authorizes the probate court to require a negligent trustee to account to the trust for interest lost due to the trustee's negligence. R.C. 2109.42. Moreover, it is only appropriate in measuring the loss to the trust and in attempting to make the trust whole (*i.e.*, awarding damages), to impose some measure of interest upon funds negligently managed; funds which, if managed properly, would likely have earned some measure of interest. In other words, a negligent trustee may be surcharged for unreasonable investments, including lost principle and lost interest. Again, this award must be predicated upon a finding of negligence in a particular investment and supported by some evidence to show what a reasonable investment would have returned, during the time in which the funds were negligently managed. In the proceedings below, there was no evidence that the legal rate of ten percent was appropriate or that the trust was entitled to receive the legal rate for the entire period.[9]

We realize the burden placed upon the court and the successor trustee, by our holding; however, the statutory language is clear that a trustee will only be held to account for losses resulting from his negligence. "The obligation [i]s upon the [successor trustee] * * * to urge the question here presented * * * and require an adjudication upon" the issue of negligence in management and resultant losses to the trust. *Chapman v. Menke* (App.1944), 45 Ohio Law Abs. 625, 630, 68 N.E.2d 361, 364.

In accordance with the foregoing analysis, the judgment of the probate court is reversed, and judgment is entered in favor of appellant on the request for surcharge. See *Lakeside Hosp. v. Kovar* (1936), 131 Ohio St. 333, 6 O.O. 54, 2 N.E.2d 857, paragraph four of the syllabus.

*Judgment accordingly.*

JOSEPH E. O'NEILL, J., concurs.

CHRISTLEY, P.J., concurs in judgment only.

---

9. We also note Western Surety's objection to the imposition of interest on the ground that R.C. 2109.31(D) prohibits a court from imposing sanctions on the surety of a fiduciary. However, the imposition of interest here is not a sanction, but a measure of damages suffered by the trust and its beneficiaries. Also, R.C. 2109.31, as stated previously, provides remedies to the probate court for the fiduciary's failure to file his accounting after the court issued a citation. It has no applicability to the surcharge here.