OPINION
{¶ 1} Appellant/cross-appellee, Richard C. Klein, and appellee/cross-appellant, Marjorie Sudnick, f.k.a. Marjorie L. Blackett, appeal from a final judgment of the Probate Division of the Geauga County Court of Common Pleas.[1] For the reasons that follow, the judgment of the probate court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 2} On August 9, 1995, appellee filed a declaratory judgment action seeking to find appellant, in his capacity as the executor of the estate of Ralph M. Lauria, Jr., personally liable for the financial losses suffered by the estate during the time it was under appellant's supervision. According to the complaint, the decedent died on October 22, 1987, and was survived by his estranged wife and three adult children, as well as by appellee, who was living with the decedent. At the time of his death, the decedent owned one hundred percent of the stock of Lauria Excavating Co., Inc. ("the corporation"), which was valued at $450,000 and represented eighty-eighty percent of the decedent's $508,762.53 estate.
 {¶ 3} In his will, the decedent bequeathed one hundred twenty-six shares of the corporation's stock to appellee. However, on the same day he executed his will, the decedent also entered into an agreement with the corporation and appellee whereby the corporation agreed to purchase appellee's one hundred twenty-six shares for $150,000 within six months of the decedent's death. This purchase was to be financed with a $200,000 life insurance policy payable to the corporation.
 {¶ 4} When the decedent died, appellant took control of the corporation while one of the decedent's son, Michael Lauria, managed the day-to-day operations. It is undisputed that appellant never sought approval or permission from the probate court to continue the corporation's business. Despite this, however, appellant operated the business for almost six years following the decedent's death.
 {¶ 5} Appellant filed the first accounting on April 26, 1990, at which time he indicated the business was valued at $349,200. When appellant filed a second accounting on January 25, 1995, he indicated that the corporation's value had fallen to $19,129. Finally, in October 1995, appellant distributed the remaining forty-five shares of the corporation to the beneficiaries, including 15.12 shares to appellee.
 {¶ 6} In her complaint, appellee alleged that appellant had violated R.C. 2113.30 in operating the corporation without court authority for a period longer than one month after his appointment as executor. As a result, appellee claimed that appellant should be held personally liable for the financial losses suffered by the corporation during his administration of the estate. Appellee also submitted that appellant had violated R.C. 2109.37 by failing to properly invest and preserve the estate's assets.
 {¶ 7} Appellant responded by filing a motion to dismiss appellee's complaint. In his motion, appellant argued, inter alia, that the probate court lacked jurisdiction over the matter as R.C. 2113.30 only applied to businesses operated as sole proprietorships and not corporations. The probate court granted appellant's motion to dismiss with respect to count one of the complaint, concluding that R.C. 2113.30 only applied to sole proprietorships and not to corporations having a single shareholder.
 {¶ 8} A bench trial began on October 9, 1996. However, following the parties' opening statements, appellant moved to dismiss the remaining count because appellee had failed to include in her complaint a demand for money damages. The probate court granted appellant's motion to dismiss, and appellee filed an appeal with this court.
 {¶ 9} On appeal, this court reversed the judgment of the probate court. We held that the General Assembly did not limit the applicability of R.C. 2113.30 to sole proprietorships or other unincorporated businesses, and that there was no logical reason to differentiate between sole proprietorships and corporations that have a single shareholder. Furthermore, this court also held that although appellee had not expressly requested monetary relief, a reasonable interpretation of her complaint could lead to the conclusion that appellee was seeking money damages for the amount of loss suffered as a result of the alleged failure of appellant to properly invest and preserve the assets of the estate. Sudnek v. Klein (1997), 125 Ohio App.3d 336.
 {¶ 10} The probate court subsequently conducted a four-day bench trial beginning on September 8, 1999. On June 8, 2000, the probate court issued a written judgment awarding appellee $123,271.32, which was determined by calculating what appellee's share of the estate would have been if the corporation had been liquidated at the time of the decedent's death. In doing so, the probate court found that appellant had been negligent in the administration of the estate. Specifically, the court, found that appellant had "failed to use due diligence and care in monitoring the single most valuable asset of the estate, the decedent's wholly owned excavating business[,]" and that he "was negligent in not taking steps to liquidate the business when it should have been obvious that the business was no longer viable and that continued operation was detrimental to the estate."
 {¶ 11} Furthermore, pursuant to R.C. 2307.33(F), the probate court offset a settlement appellee had already received from David G. Davies ("Davies"), the attorney who had represented her interest in the estate during the estate's decline. The court, however, refused to award appellee any interest on her award because she had initially consented to the continuation of the business and had failed to seek liquidation of the corporation. Accordingly, the probate court ultimately entered judgment in appellee's favor for $63,271.32.
 {¶ 12} From this judgment, appellant filed a timely notice of appeal and appellee subsequently filed a notice of cross appeal. After reviewing the probate court's entry, we remanded the matter so that the court could enter judgment against appellant individually and against Peerless Insurance Company on its surety bond. The probate court complied with our request, and the case then proceeded according to rule. Appellant now raises the following assignments of error for our review:
 {¶ 13} "[1.] Sudnik failed to meet her burden of proof that Klein breached his fiduciary duty and thereby caused uncompensated damages[.]
 {¶ 14} "[2.] The trial court erroneously determined Sudnik's damages[.]
 {¶ 15} "[3.] The trial court improperly considered Sudnik a residuary legatee for its damage calculation[.]"
 {¶ 16} Appellee filed a brief responding to appellant's proposed errors. She also assigned the following as error on cross appeal:
 {¶ 17} "[1.] The Probate Court erred in calculating Sudnik's damages by failing to also award her the income or interest her share of the estate should have earned during administration[.]
 {¶ 18} "[2.] The Probate Court erred in setting off the damages awarded Sudnik by the amount that she received in the settlement of her malpractice action against her former attorney who represented her with regard to her interest in the decedent's estate[.]"
 {¶ 19} Under his first assignment of error, appellant essentially argues that the probate court's judgment is against the manifest weight of the evidence as appellee did not provide anything proving that he breached his fiduciary duty to administer the estate in a competent manner. In particular, appellant maintains that he was authorized to continue the business because: (1) appellee had consented to this course of action, and (2) due to the difficulty in fulfilling the terms of the decedent's will, the corporation had to continue operations until there were sufficient funds to satisfy the estate's debts, taxes, the widow's election, and other specific bequests.
 {¶ 20} Before proceeding to the merits of appellant's first assignment of error, we note that there apparently is some confusion as to what R.C. 2113.30 requires of executors. Appellee contends that appellant, as the executor, had the burden of proving that the admittedly unauthorized continuation of the corporation was proper, and that the losses incurred as a result of continuing the business were justifiable. She believes that if an executor does not seek the probate court's permission to operate a decedent's business for one month after the decedent's death, the executor should be held strictly liable for any losses that the business suffers.
 {¶ 21} At the time appellant was appointed executor, R.C. 2113.30
provided:
 {¶ 22} "Except as otherwise directed by the decedent in his last will and testament, an executor or administrator may, without personal liability for losses incurred, continue the decedent's business during one month next following the date of the appointment of such executor or administrator, unless the probate court directs otherwise, and for such further time as the court may authorize on hearing and after notice to the surviving spouse and distributees. In either case no debts incurred or contracts entered into shall involve the estate beyond the assets used in such business immediately prior to the death of the decedent without the approval of the court first obtained. During the time the business is continued, the executor or administrator shall file monthly reports in the court, setting forth the receipts and expenses of the business for the preceding month and such other pertinent information as the court may require. The executor or administrator may not bind the estate without court approval beyond the period during which the business is continued."[2]
 {¶ 23} In our earlier decision, this court noted that "the purpose of R.C. 2113.30 is to protect the interests of the heirs by requiring the executor or administrator to obtain the permission of the probate court in order to continue the business for more than one month, and to file monthly reports setting forth the receipts and expenses." Sudnek at 340. Accordingly, we held that "R.C. 2113.30 simply provides the probate court with a method of protecting the interests of the heirs, while at the same time providing immunity for the executor who abides by the terms of the statute." Sudnek at 340.
 {¶ 24} Put another way, R.C. 2113.30 does not impose a duty whose breach would require strict liability. In fact, it does not even forbid an executor from continuing a business after a decedent's death. In reShaw (Mar. 11, 1985), 4th Dist. No. 83 CA 36, 1985 Ohio App. LEXIS 6170, at 7 (holding that "[t]he statute does not absolutely prohibit the continuation of a decedent's business but, rather, withdraws protection against personal liability of the executor."). Instead, an executor who continues a decedent's business after one month from the date of appointment as executor, without first obtaining the permission of the probate court, does so at his peril, and may be accountable for any losses incurred by the business.
{¶ 25 That being said, appellant's liability, if any, must be premised on the common-law doctrine of breach of fiduciary trust, in that he either exceeded the scope of his authority or failed to timely liquidate the estate. To be successful on such a claim, appellee had to prove, by clear and convincing evidence, the existence of a duty arising out of a fiduciary relationship, a failure to observe that duty, and an injury resulting approximately therefrom. Strock v. Pressnell (1988),38 Ohio St.3d 207, 216; Snead v. McCaskey (June 27, 1997), 11th Dist. No. 96-G-2007, 1997 WL 402396, at 3. See, e.g., R.C. 1701.59 (providing that clear and convincing evidence is required to prove a breach of fiduciary duty by corporate directors).
 {¶ 26} As we discussed above, the probate court expressly found that appellant had failed to use due care and diligence in the administration of Lauria's estate. According to the probate court, although the corporation made a profit in 1987 and 1988, after appellant became the executor in 1989, the corporation "began to show steady and sometimes dramatic loses. The assets of the corporation were dissipated with little oversight and no intervention by the executor until such time that the corporation was worth only [a] fraction of its original value."
 {¶ 27} It is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Shemo v. Mayfield Hts., 88 Ohio St.3d 7, 10, 2000-Ohio-258.
 {¶ 28} In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings."State ex rel. Celebrezze v. Environmental Enterprises, Inc. (1990),53 Ohio St.3d 147, 154. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19.
 {¶ 29} After carefully considering the record, we conclude that there is some competent, credible evidence to support the trial court's judgment. There is no question that appellant failed to seek an order from the probate court, pursuant to R.C. 2113.30, authorizing the continuation of the business of the corporation. Both parties also agree that the decedent's will did not specifically grant appellant the power to continue operating the business after the decedent's death.
 {¶ 30} Furthermore, the value of the business plummeted from $450,000, when appellant was appointed executor in 1989, to $19,129, when appellant decided to finally wind up the estate in 1995. Appellant, however, argues that the six-year delay was necessary to administer the estate, and that the corporation's assets had to be sold to pay the business' debts and the widow's exception.
 {¶ 31} Even if that were true, appellant was obligated to liquidate the corporation within a reasonable time period and to distribute the assets in the estate to the beneficiaries. At the same time, if appellant was having trouble distributing the assets as required, he still had to ensure that the corporation's value did not simply evaporate through either incompetence or complacency. Obviously, a $430,871 decline in value is strong evidence that appellant failed to observe his fiduciary duty in this case.
 {¶ 32} Appellant also argues that because appellee agreed to the continued operation of the business by appellant and the decedent's adult children, and because she did not demand the sale of the corporation or seek to have the corporation liquidated, his culpability is somehow lessened. We disagree.
 {¶ 33} The question of whether appellee acquiesced to continuing the business until the resolution of the distribution of the remaining shares could be resolved is a factor to consider. However, it certainly does not absolve appellant of his negligent acts and/or omissions. Moreover, there is a substantial amount of evidence that during the six years appellant continued the business appellee was not given the necessary information to keep her sufficiently informed of the corporation's financial standing, as appellant admittedly did not make annual accountings to the beneficiaries.
 {¶ 34} As a result, we conclude that under these facts, the probate court could reasonably find that appellant had breached his fiduciary duty in administering the estate. Appellant's first assignment of error has no merit.
 {¶ 35} In assignment of error two, appellant first agrees that the probate court properly found that he was entitled to set off funds appellee had received from her malpractice action against her former attorney with respect to his representation in this case. However, he argues that the court did not set off the correct amount in its final judgment. Specifically, appellant claims that instead of the $60,000 the trial court found should be set off, the true amount was $84,454, which represented a $65,000 settlement plus $19,454 in legal fees and costs that Davies agreed to waive in return for settling the case.
 {¶ 36} Similarly, under her second assignment of error on cross appeal, appellee maintains that the trial court erred in setting off any amount of her settlement with Davies because he and appellant are not joint tortfeasors under R.C. 2307.32(F). Further, even if appellant and Davies were considered joint tortfeasors, appellee submits that a setoff still was not appropriate because the two men violated different fiduciary duties owed to her and should be accordingly accountable.
 {¶ 37} R.C. 2307.32(F) provides:[3]
 {¶ 38} "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:
 {¶ 39} "(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater.
 {¶ 40} "(2) The release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."
 {¶ 41} The purpose of R.C. 2307.32 is "to ensure that where multiple tortfeasors were at fault in bringing about the injury to the innocent party, each tortfeasor would share the burden of making the injured party whole again." Fidelholtz v. Peller, 81 Ohio St.3d 197,203, 1998-Ohio-462. In interpreting this statute, the Supreme Court of Ohio has held that:
 {¶ 42} "Former R.C. 2307.32(F) (now R.C. 2307.33[F]) entitles a defendant to set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person `liable in tort.' A person is `liable in tort' when he or she acted tortiously and thereby caused damages. This determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself." Fidelholtz at syllabus.
 {¶ 43} Here, Davies clearly acted tortiously in failing to competently represent appellee during the administration of the estate. Also, there is no question that Davies' failure to provide adequate representation contributed to appellee's damages. As appellee's attorney, Davies was obligated to protect appellee's interest in the decedent's estate. Davies, through competent representation, could have lessened the extent of the damages suffered by appellee by taking steps to discover appellant's tortious conduct. In turn, his failure to do so is a contributory cause of appellee's total loss, even though Davies and appellant acted independently. As a result, although Davies and appellant did not act in concert, Davies is "liable in tort" as that term is contemplated by the Supreme Court of Ohio because appellant's breach of fiduciary trust cannot be separated from Davies' malpractice. Appellee's second assignment of error on cross appeal has no merit.
 {¶ 44} That being said, a question still remains as to exactly how the probate court calculated the setoff. In an August 25, 1999 judgment entry, the probate court made the following finding: "8. That the gross settlement of [appellee's] suit against David G. Davies was Sixty-Five Thousand 00/100 Dollars ($65,000.00)." However, in its June 8, 2000 order awarding appellee damages, the probate court found, without explanation, that appellee had "received a $60,000.00 settlement from her former counsel." Obviously, one of the two amounts is incorrect, and the probate court needs to clarify the reason for the difference.
 {¶ 45} Finally, appellant argues that the probate court should have included the legal fees and costs that Davies waived as part of his settlement with appellee in calculating the setoff. We disagree.
 {¶ 46} The fees and costs Davies agreed to waive were earned in the course of his representation of appellee's interest in the decedent's estate. Thus, although appellee may have been obligated to pay them, they are not part of the damages appellee suffered as a result of Davies malpractice and should not be considered in determining what, if any, setoff appellant is entitled to receive. Appellant's second assignment of error is well-taken to the limited extent indicated.
 {¶ 47} In his third and final assignment of error, appellant argues that the probate court erred in considering appellee as a residuary beneficiary of the estate. According to appellant, even if he could have immediately liquidated the corporation after his appointment, appellee was only entitled to that portion of the estate representing her interest in the corporation.
 {¶ 48} As we already discussed, the decedent's will left appellee one hundred and twenty-six of the two hundred and fifty shares the decedent held in the corporation. This represented 50.4 percent of the corporation's value, or $226,800. In calculating appellee's damages, the probate court first determined what expenses were allowable ($70,635.41) and the total widow's exception ($193,541.15). The court then subtracted these figures from the value of the estate at the time the decedent died ($508,762.53), which left $244,585.97 remaining in the estate. The probate court then calculated appellee's share of the remaining assets in relation to what she would have originally received under the terms of the will (50.4% x $244,585.97). This resulted in the probate court awarding appellee $123,271.32.
 {¶ 49} After reviewing the probate court's calculations, we conclude that the court's award was proper. If appellant had acted appropriately, the only asset that would have remained in the estate after subtracting the expenses and the widow's exception was the corporation. As a result, because appellee was to receive one hundred and twenty-six shares of corporate stock when the decedent died, she was entitled to her 50.4 percent share of the corporations' value after the accepted deductions. Calculating appellee's damages in this manner is not the same as treating her as a residuary beneficiary. Rather, the probate court awarded a proportionate amount of the corporations' remaining value. Appellant's third assignment of error has no merit.
 {¶ 50} In her first assignment of error on cross appeal, appellee argues that the probate court erred in failing to award her interest on her share of the estate that would have been earned if appellant had not breached his fiduciary duty. She believes that because appellant was obligated to ensure that the assets of the estate were invested and earned income or interest, he should be held accountable for failing to do so.
 {¶ 51} R.C. 2109.42 provides that a fiduciary that has funds that are not required for payment of current obligations must invest those funds within a reasonable time. If a fiduciary fails to comply with requirements of R.C. 2109.42, he must "account to the trust for such loss of interest as is found by the court to be due to his negligence." Seealso, In re Hamm (1997), 124 Ohio App.3d 683, 690.
 {¶ 52} Here, the probate court found that appellant had been negligent in his administration of the estate. However, the court declined to award appellee interest on her damages because she initially consented to the continuation of the business and failed to pursue liquidation of the corporation.
 {¶ 53} Although we understand the probate court's concerns, there is a substantial amount of evidence in the record showing that appellee was not kept informed about the corporation's true financial standing. For example, appellant admitted to not filing regular accounts with the beneficiaries. Also, it appears that appellant failed to keep Davies accurately informed of the corporation's situation. We see little reason to punish appellee for something that, at best, can be classified as uninformed compliance.
 {¶ 54} Furthermore, whether or not appellee consented to appellant's continuation of the business has no bearing on appellant's negligent administration of the estate. Simply stated, appellant was obligated by statute to ensure that the assets of the estate were properly invested during the time between the decedent's death and the distribution of the estate. To hold otherwise would allow appellant to essentially benefit from his mismanagement. Appellee's first assignment of error on cross appeal has merit.
 {¶ 55} Based on the foregoing analysis, appellant's first and third assignments of error are not well-taken, while his second assignment of error has merit to the limited extent indicated. Furthermore, appellee's first assignment of error on cross appeal has merit, while her second assignment of error does not. Accordingly, the judgment of the probate court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, P.J., and DIANE V. GRENDELL, J., concur.
[1] For ease of discussion, we will refer to the parties as "appellant" and "appellee" even in the context of the cross appeal.
[2] Effective July 23, 2002, R.C. 2113.30 now provides:
"Except as otherwise directed by the decedent in the decedent's last will and testament, an executor or administrator, without personal liability for losses incurred, may continue the decedent's business during four months next following the date of the appointment of that executor or administrator, unless the probate court directs otherwise, and for any further time that the court may authorize upon a hearing and after notice to the surviving spouse and distributees. In either case, no debts incurred or contracts entered into shall involve the estate beyond the assets used in that business immediately prior to the death of the decedent without first obtaining the approval of the court. During the time the business is continued, the executor or administrator shall file monthly reports in the court, setting forth the receipts and expenses of the business for the preceding month and any other pertinent information that the court may require. The executor or administrator may not bind the estate without court approval beyond the period during which the business is continued."
[3] The amendment and recodification of this section as R.C. 2307.33
was repealed effective July 6, 2001.